**UNITED STATES of America**

**v.**

**Martin KOZAK, Appellant in 19115, and John Shopa.**

**Appeal of John SHOPA, in No. 19116.**

**Nos. 19115, 19116.**

United States Court of Appeals, Third Circuit.

Argued Oct. 29, 1970.

Decided Feb. 18, 1971.

Edward A. Rudley, Pelagatti, Rudley & Forceno, Philadelphia, Pa., for appellants.

Carl J. Malone, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before FORMAN, SEITZ and ALDISERT, Circuit Judges.

OPINION OF THE COURT

FORMAN, Circuit Judge.

Appellants, Martin Kozak and John Shopa, were indicted in the United States District Court for the Eastern District of Pennsylvania on two counts under 18 U.S.C. § 1510.[1] The first count charged that on or about July 9, 1968, in Philadelphia, they willfully endeavored by means of force and violence to obstruct, delay and prevent the communication of information relating to a violation of a criminal statute of the United States (18 United States Code § 1952)[2] by Martin Illich to a Special

1. Section 1510 reads:
  "Obstruction of criminal investigations
  "(a) Whoever willfully endeavors by means of bribery, misrepresentation, intimidation, or force or threats thereof to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator; or

  "Whoever injures any person in his person or property on account of the giving by such person or by any other person of any such information to any criminal investigator—

  "Shall be fined not more than $5,000, or imprisoned not more than five years, or both.
  "(b). As used in this section, the term 'criminal investigator' means any individual duly authorized by a department, agency, or armed force of the United States to conduct or engage in investigations of or prosecutions for violations of the criminal laws of the United States."

2. "Section 1952. Interstate and foreign travel or transportation in aid of racketeering enterprises
  "(a) Whoever travels in interstate or foreign commerce or uses any facility

Agent of the Federal Bureau of Investigation. The second count charged that at the same time and place they injured Mr. Illich because he had given information to the special agent relating to the alleged violation named in the first count.

Appellants were both found guilty on the first count, while on the second count Mr. Kozak alone was found guilty and Mr. Shopa was acquitted. Following denial of post-trial motions for a judgment of acquittal or for a new trial, Mr. Kozak was sentenced on the first count to imprisonment for two years[3] and on the second count the imposition of sentence was suspended. Mr. Shopa was also sentenced to two years[4] on his conviction on the first count. This appeal followed.

The assault on Mr. Illich, and other incidents which are alleged to have given rise to the indictment herein, occurred on the evening of July 9, 1968, in Domzalski's Tavern, one of the places of refreshment frequented by Mr. Illich and the appellants.

In January 1968 the premises of Carl Pernitski at 976 and 978 North Lawrence Street, Philadelphia, consisting of his bar, restaurant and home were subject to a search warrant raid by agents of the Federal Bureau of Investigation in connection with a grand jury investigation which led to a prosecution against Mr. Pernitski for interstate transportation in aid of racketeering (gambling) in violation of 18 U.S.C. § 1952.[5] Appellants were said to have been involved in Mr. Pernitski's enterprise, and it was in connection with this operation that Mr. Illich is alleged to have passed information to a special agent.

The uncontradicted testimony at trial revealed that appellants were present on the Pernitski premises, where Mr. Illich was employed as a "door man,"[6] on January 29, 1968—the time of a raid by agents of the Federal Bureau of Investigation; that each appellant was then served with a subpoena, following which they appeared before a Federal Grand Jury; that Mr. Illich was also subpoenaed and so appeared; that the alleged incidents in the Domzalski barroom, described herein, occurred on July 9, 1968, the same date upon which Mr. Kozak was subpoenaed for the Grand Jury a second time in the Pernitski investigation; that at the trial which followed the indictment the acquaintanceship of appellants with Mr. Illich was established; that Mr. Illich testified that on July 9, 1968, both defendants struck him with their fists repeatedly after Mr. Kozak voiced the accusation, "You turned me in"; and that subsequently Mr. Kozak asked him to "drop the charges." Mr. Domzalski and his bartender testified cautiously concerning the confrontation between Mr. Illich and the appellants, but at least confirmed the presence of all three together at the bar.

---

in interstate or foreign commerce, including the mail, with intent to—

"(1) distribute the proceeds of any unlawful activity; or

"(2) commit any crime of violence to further any unlawful activity; or

"(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

\* \* \*

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, \* \* \* "

3. The sentence was made subject to the condition that the prisoner be confined in a jail type or treatment institution for six months and the execution of the remainder of the sentence was suspended and probation ordered for a period of one and one-half years.

4. The same condition was prescribed as in the case of Mr. Kozak. See note 3.

5. Charges under which Mr. Pernitski was ultimately convicted.

6. He was later succeeded by Mr. Kozak.

### I

Appellants first contend that the District Judge erred in his charge to the jury regarding the extent of knowledge required under § 1510 to establish intent to engage in the prohibited conduct. The disputed charge stated:

"  *   *   *   you must find beyond a reasonable doubt that the defendants knew that Illich was giving information to a Special Agent of the Federal Bureau of Investigation, or that they believed that he was doing it, and that they reacted in response to that belief *   *   *  ".

Upon exception taken by defense counsel, the District Judge further charged:

"It is not necessary that defendants have certain knowledge that Illich had in fact communicated such information *   *   *   The Government need only prove as to this aspect that defendants believed that Illich would communicate such information, and that the force took place with an effort to obstruct, delay or prevent such communication."

Appellants suggest, contrary to the above charge, that the proper standard under § 1510 is actual knowledge that information had been or would be given. No cases have been decided as yet under this recently-enacted section.

The legislative history of § 1510 discloses that its purpose was to extend the protection of the preceding §§ 1503 [7] and 1505 [8] afforded witnesses, jurors and others in judicial, administrative and congressional proceedings to "potential informants or witnesses" and to those who communicate information to Federal investigators prior to a case reaching the court.[9] In the absence of any adjudication interpreting § 1510, appellants suggest that the same standards required by courts in cases under §§ 1503 and 1505 should be applied in determining the extent of proof necessary in a case under § 1510.

The appellants argue that transposing the standard of §§ 1503 and 1505 would require, under § 1510, actual knowledge on the part of the accused that the alleged informer either had testified against their interests or was about to do so, and proof that because of that knowledge both appellants set about to injure the alleged informer (Illich). But the legislative history of § 1510 indicates that Congress did not intend to establish this suggested standard.

In its discussion of scienter, the House Committee on the Judiciary specifically stated that there must be actual knowledge that the recipient or intended recipient of information be a criminal investigator as defined in § 1510(b), but remained silent on the question of whether it was necessary to prove actual knowledge that an informant had transmitted, or was about to transmit, information to such investigator.[10] Since the legislative history indicates that decisions of the courts under §§ 1503 and 1505 were discussed during considera-

---

7. "Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States *   *   *   or injures any party or witness in his person or property on account of his attending or having attended such court *   *   *   or corruptly or by threats or force,  *   *   *   impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined  *   *   *  " § 1503.

8. "Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness in any proceeding pending before any department or agency of the United States, or *   *   *

"Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law  *   *   *  

"Shall be fined  *   *   *  " § 1505.

9. H.R.Rep.No.658, United States Code, Congressional and Administrative News, 90th Cong., 1st Sess., 1760 (1967).

10. *Id.* at 1762.

tion of § 1510,[11] silence on this aspect of scienter suggests that if Congress had intended to alter the judicially determined standard, it would have so stated.

The acceptance of appellants' suggestion that the degree of scienter established under §§ 1503 and 1505 be extended to the companion provision, § 1510, however, does not go the length asserted by appellants. An examination of the cases adjudicated under §§ 1503 and 1505 reveals that actual knowledge that an informant has supplied, or is about to supply, information to an investigator has not been required by the courts. Thus, in Odom v. United States,[12] submitted by both appellants and appellee, the court was similarly presented with the issue of the sufficiency of a showing that accused *knew* that a government witness had testified, or intended to testify, against him and there held that:

> "The knowledge necessary is not absolute or direct knowledge * * * but information or a reasonably founded belief thereof is sufficient to make the requisite scienter."[13]

It is apparent that *Odom* did not establish the standard appellants urge upon the court, but rather, permitted a finding of scienter where the accused reasonably believed that information had been, or would be, supplied to an investigator.[14]

■ As indicated by *Odom*, the standard of knowledge in the instant case under § 1510 required no more than that the Government establish a reasonably founded belief that information had or was about to be given, and Judge Higginbotham's charge as supplemented properly instructed the jury and guided it correctly regarding the law to be applied by it in its inquiry as to whether appellants had violated § 1510.

## II

Appellants next contend that the evidence was as consistent with innocence as guilt; that it therefore should not have been submitted to the jury, and alternatively, that it was insufficient to support the verdict.

To buttress these arguments, appellants point out first that the Government did not show that Mr. Kozak and Mr. Shopa had actual knowledge that Mr. Illich had conveyed, or was about to convey, information to a special agent of the Federal Bureau of Investigation, since the Government introduced into evidence only a stipulation showing the dates of appearance of Mr. Illich and appellants before the Grand Jury to prove knowledge. Appellants claim that the lack of direct evidence to prove this allegedly vital point constituted a fatal flaw in the Government's chain of proof. This argument, however, is founded on the erroneous assumption, discussed in the preceding section, that the Government was required to prove appellants' actual knowledge that Mr. Illich had or was about to supply information, whereas the Government had only to demonstrate that appellants entertained a reasonable belief to that effect.

Appellants additionally emphasize Mr. Illich's testimony that "bad blood" had existed between appellants and him for at least three years, and that they had previously engaged in hostilities similar to that of July 9, 1968. They further point out that Mr. Kozak replaced Mr. Illich in his position as "doorman" at the Pernitski establishment when Mr. Illich was discharged; that the agent of the Federal Bureau of Investigation testified that he did not notice bruises and marks on Mr. Illich the day following the inci-

11. *Id.* at 1761; Haili v. United States, 260 F.2d 744 (9 Cir. 1958), United States v. Scoratow, 137 F.Supp. 620 (W.D.Pa.1956).

12. 116 F.2d 996, 998 (5 Cir. 1941), rev'd on other grounds, 313 U.S. 544, 61 S.Ct. 957, 85 L.Ed. 1511 (1941).

13. Accord, Broadbent v. United States, 149 F.2d 580 (10 Cir. 1945).

14. Neither is appellants' contention supported by Knight v. United States, 310 F.2d 305 (5 Cir. 1962), where, far from establishing a standard of actual knowledge, the court held that scienter could be inferred from the body of evidence as a whole.

dent; and Domzalski testified that he heard only a "slap" or "smack" at the time Mr. Illich sustained his injuries.

Whether this evidence necessitates the conclusion that innocence was as consistent as guilt must be determined in light of the body of evidence as a whole. It is fundamental that, in building a chain of evidence, inferences of knowledge and motive may be drawn from circumstances rather than direct evidence.[15] In addition, the court, on a motion for acquittal and a new trial, must take that view of the evidence most favorable to the opposite party— the Government, United States v. Carlson.[16] Here, substantial evidence was introduced at trial from which inferences opposing those urged by appellants were justified. It was shown that an investigation of violations under 18 U.S.C. § 1952 were in progress; that appellants and Mr. Illich had engaged in the activities under investigation; that appellants and Mr. Illich had testified before the Grand Jury charged with this investigation and, indeed, Mr. Illich was subpoenaed again on the day of the alleged assault to testify on the following day. Evidence was further introduced to show that Mr. Illich, contrary to the advice of an Assistant United States Attorney, had told a mutual friend of his and appellants' that he had testified; that, according to Mr. Illich's testimony, Mr. Kozak had said "You turned me in" immediately before the assault; and that appellants had asked Mr. Illich to drop the charges. Finally, the evidence fully justified the finding that appellants sought out Mr. Illich at the bar when the alleged attack took place.

It is only when the undisputed evidence is as consistent with innocence as with guilt that a finding of insufficiency for jury consideration is justified. Gravatt v. United States.[17] Here the record shows simply that a considerable amount of conflicting evidence was introduced. It was properly submitted to the jury, which chose to assign greater weight and credibility to the Government's proofs. Examining the evidence as a whole, it is equally apparent that it achieved a sufficiency to support the verdict and the contention of appellants in this regard is without merit.

### III

Appellants urge further that the District Judge erred in not granting a new trial on the basis of after-discovered evidence. Essentially, they argue that the Government's case rested heavily on the testimony of Mr. Illich, and that the opportunity to impeach him with evidence of prior criminal convictions might well have resulted in a different verdict. The reasons presented by the District Judge, in his opinion, denying a new trial on these grounds are well-founded.[18] As he stated, such motions are to be granted with the greatest of caution, United States v. Hoffa,[19] and the general rule governs that after-discovered evidence merely impeaching the credibility of a prosecution witness is insufficient to justify a new trial, Mesarosh v. United States.[20] In this case, the District Judge logically reasoned that the conviction did not rest solely upon Mr. Illich's testimony; that defense counsel were allowed "extreme latitude" at the trial in their attempts to impeach Mr. Illich insofar as they were permitted to ask him, upon cross-examination, whether he had ever sold "hot" suits, or been a procurer of women; and that Mr. Illich had admitted his own involve-

---

15. *Odom, supra* note 12, 116 F.2d at 998.

16. 359 F.2d 592 (3 Cir. 1966), cert. den. 385 U.S. 879, 87 S.Ct. 161, 17 L.Ed.2d 106 (1966).

17. 260 F.2d 498 (10 Cir. 1958).

18. United States v. Kozak & Shopa, Civil No. 69–256 (E.D.Pa., filed May 22, 1970).

19. 382 F.2d 856 (6 Cir. 1967), cert. den. 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1968).

20. 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956).

ment in illegal activities. The cumulative weight of these considerations can lead only to the conclusion that Judge Higginbotham did not err in refusing to grant a new trial on the basis of newly discovered evidence.

### IV

 The final contention is that the verdict as to appellant Shopa—guilty on the first count, and not guilty on the second—cannot stand for inconsistency. The first count charged the endeavor to use force and violence; the second count charged the actual use of it. The endeavor and the actual use of force are separable, and have been so construed under §§ 1503 and 1505. In Knight v. United States,[21] the court, presented with the identical issue, upheld an inconsistent verdict on two counts, concluding that "Success or failure of the endeavor is immaterial." Appellants' argument must also fail, since rational consistency in the verdict on separate counts is not required, United States v. Vastine.[22] The comment in Mogoll v. United States[23] is clearly cogent here:

> "A trial on an indictment in separate counts is the same in law as a trial on separate indictments. While the verdict as to each count must be consistent in itself, the verdicts on the several counts need not be consistent with each other. The question for review here, therefore, is not whether the verdict of guilty on the eighth count is consistent with the verdict of acquittal on the other counts. It is whether it is consistent with the evidence * * *"

In the present case, Mr. Illich testified definitely that Mr. Kozak was in front of him, and that he saw Mr. Kozak strike him. There was some dispute, however, whether Mr. Shopa struck Mr. Illich because Mr. Shopa was somewhere behind him at the time of the assault, and Mr. Illich could testify only that he felt punches from behind, without definitely being able to identify his assailant.

Since the verdict of the jury that appellant Mr. Shopa was guilty on the first count is consistent with the evidence, this last attack upon it also falls.

Hence the order of the United States District Court for the Eastern District of Pennsylvania of May 22, 1970, denying the motions of Martin Kozak and John Shopa for a new trial and judgment of acquittal, and the judgments and sentences of June 15, 1970 are affirmed.

---

21. *Supra*, note 14, 310 F.2d at 307.

22. 363 F.2d 853 (3 Cir. 1966).

23. 158 F.2d 792, 793 (5 Cir. 1946), rev'd on other grounds, 333 U.S. 424, 68 S.Ct. 487, 92 L.Ed. 783 (1947).