**UNITED STATES of America, Appellee,**

**v.**

**Norman Lee WILLIAMS, Appellant.**

**UNITED STATES of America, Appellee,**

**v.**

**Ethelbert WALKER, Appellant.**

**Nos. 72–1250, 72–1228.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1972.

Decided Jan. 4, 1973.

Samuel J. Molby, Kansas City, Mo., for appellant, Walker.

Lewis E. Pierce, Kansas City, Mo., for appellant, Williams.

J. Whitfield, Moody, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before MATTHES, Chief Judge, ROSS, Circuit Judge, and VAN PELT, Senior District Judge.*

MATTHES, Chief Judge.

Appellants were jointly indicted, tried, and found guilty of violating 18 U.S.C. § 1510.[1] Appellants filed separate notices of appeal and briefs in this court. Both appellants challenge the sufficiency of the evidence to warrant submission of the case to the jury, but for different reasons. We hold the evidence was insufficient as a matter of law to convict appellant Walker and reverse the judgment of conviction against him. We further hold the government made a submissible case as to appellant Williams and affirm his conviction.

The prosecution is premised on evidence which occurred on October 6, 1971, at two locations in Kansas City, Missouri. The principals are: (1) Antonio Arbelo, an admitted paid informer for the Federal Bureau of Narcotics and Dangerous Drugs and a victim of the assault giving rise to this prosecution; (2) appellant Ethelbert Walker, who was

---

* District of Nebraska, sitting by designation.

1. Section 1510, enacted November 3, 1967, 81 Stat. 362, provides in pertinent part:
   (a) Whoever willfully endeavors by means of bribery, misrepresentation, intimidation, or force or threats thereof to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator; or

Shall be fined not more than $5,000, or imprisoned not more than five years, or both.

(b) As used in this section, the term "criminal investigator" means any individual duly authorized by a department, agency, or armed force of the United States to conduct or engage in investigations of or prosecutions for violations of the criminal laws of the United States.

present in the Porters' and Waiters' Club (hereinafter referred to as Club), located at East 27th Street, and who participated in the assault on Arbelo; (3) appellant Norman Lee Williams, the operator of the Club, the person from whom Arbelo, according to his testimony, was endeavoring to purchase a quantity of heroin under directions from the narcotics agents, and also a participant in the assault on Arbelo; (4) Bernard (Monk) Brown, a former friend of Arbelo, who was also present in the Club and the first person to strike and assault Arbelo. Brown was indicted jointly with Walker and Williams but failed to appear;[2] (5) Special Agent Reddin and Agent Dempsey, employees of the Federal Bureau of Narcotics and Dangerous Drugs. The agents had given Arbelo $300.00 in currency to purchase narcotics from Williams on the day in question. The agents had equipped Arbelo with an electronic transmitting device. It was a "belt-like" device with batteries worn around Arbelo's waist. A microphone and antenna had been taped upon his chest, close to his mouth. Further activities of the principals will be discussed below.

No. 72–1228—WALKER'S APPEAL

Walker attacks the sufficiency of the indictment and claims error in admission of certain evidence and in the instructions. Finding as we do that the government's case on the merits fails for two reasons, we pretermit discussion of Walker's alternative contentions upon which he relies for a reversal.

Although Arbelo's version of what transpired was contradicted by appellant Williams, who testified in his own behalf, the jury obviously credited Arbelo's testimony and we therefore view the case in light of his evidence. It does stand undisputed that Arbelo met Williams at 31st and Prospect Avenues on the afternoon of October 6, 1971, and that they proceeded in Arbelo's automobile to the Club. It is also undisputed that Arbelo was, at the time he met Williams and as they proceeded to the Club, under surveillance by the two agents above named and a third agent who did not testify. Upon arriving at the Club Williams and Arbelo entered, Williams in the lead. Appellant Walker entered the Club shortly thereafter. Brown was conversing over the telephone when they entered. From this point all the evidence is conflicting as to what transpired but, viewing it in the light most favorable to the verdict, we find the following occurred. Almost instantly after entering the large room of the Club, Williams addressed Brown and said, "I am bringing you this little agent . . . . You'd better kill him or I will kill him myself." Thereupon, Brown struck Arbelo with a ".38 Luger type" revolver. Walker struck him with a rifle and Williams with a ".38." During the melee Arbelo threw the $300.00 in currency on the floor and Williams took possession of it.

The narcotics agents had arrived and while seated in their automobile heard through the transmitter a voice saying "I have brought you the blank agent. Now, you kill him or I will kill him." Thereafter, the agents heard this statement: "Don't hit me again. I can't see." Thereupon, the agents left their automobile and entered the Club with drawn weapons. They observed Arbelo clinging to Brown in an apparent effort to protect himself. The agents then placed Williams, Walker, Brown, and the other occupants of the Club under arrest.[3]

█ Walker posits his claim for reversal on the lack of any evidence showing scienter, that is, (a) that Walker knew that Arbelo possessed information relating to a violation of the narcotics laws or of any criminal statute of the United States and (b) that Walker knew that Arbelo was an informer who in-

2. Brown's attorney was present when the trial commenced and was prepared to go forward but, of course, could not in the absence of his client.

3. The indictment named eight defendants. All but appellants and Brown were dismissed by the court upon motion by the government.

tended to convey this information to a federal agent or criminal investigator. We have with painstaking care canvassed the transcript of the trial proceedings and conclude that Walker's position is well founded. At best, the evidence establishes these facts: (1) Walker was a part-time "clean-up" man or janitor for Williams; (2) he. was present in the Club at the time Arbelo was first assaulted by Brown; and (3) he struck Arbelo with a rifle. Insofar as Walker is concerned the evidence stops there. There was no evidence to show or to justify an inference that Walker had ever seen Arbelo prior to the incident under consideration; there was no showing that Walker had any knowledge that Williams or Brown had engaged in the trafficking of narcotics; and there was no evidence that Walker knew that the purpose of Arbelo's presence at the Club was to gather information for a federal investigator. Although the evidence does not directly establish that Walker even heard the statement "I have brought you this little agent" such an inference is permissible for the reason that it does appear that Walker was in the clubroom at the time the quoted statement was made by Williams. Having in mind the nature of the charge as laid in the indictment, however, we conclude that the evidence focused upon Walker is wholly inadequate to fasten him with criminal liability.[4]

■ Section 1510 and its legislative history make it convincingly clear that essential elements of the offense are (1) willful endeavor by means of certain actions, including force and injury, to prevent communication of information relating to a violation of any criminal statute of the United States (§ 1510(a)); and (2) the criminal investigator must be an individual authorized by a "department, agency, . . . of the United States to conduct or engage in investigations of all prosecutions for violations of the criminal laws of the United States (§ 1510(b))."

The House Committee on the Judiciary specifically stated in discussing scienter that there must be actual knowledge that the recipient or intended recipient of information be a criminal investigator as defined in § 1510(b). H.R.Rep. No. 658 U.S.Code, Cong. & Adm. News, 90th Cong. 1st Sess., p. 1760 (1967). Thus the report states, "For example, if a person does not know that the investigator is a federal investigator, an act which would normally be in violation would not be so because of the lack of scienter as to the identity of the investigator." *Id.* at p. 1762. *See and compare* United States v. Kozak, 438 F. 2d 1062 (3rd Cir. 1971), which also involved a prosecution under 18 U.S.C. § 1510.

The evidence as to Walker leaves entirely too much to speculation. As we have seen his presence at the scene of the assault, his participation therein, and his acquaintanceship with appellant Williams are the only links in the chain of events which in any way involve him in the offénse. In the absence of any evidence from which a jury with justification could find that Walker knew of Arbelo's status as a person who intended to convey information to a federal investigator and that at the time of the assault Arbelo possessed information relating to a criminal violation of the laws of the United States, we have no choice but to reverse the judgment against Walker.

---

4. During oral argument the Assistant United States Attorney candidly conceded that aside from the evidence showing that Walker was present, knew Williams, heard the statement made by Williams and struck Arbelo, there was no direct evidence connecting Walker with the proscribed offense. The prosecutor argued, however, in effect that because Brown and Williams knew Arbelo's status, such knowledge should be imputed to Walker. We, of course, consider the evidence in the light most favorable to the Government and draw all reasonable inferences therefrom. But we are not inclined to hold that a submissible case was made against Walker from his mere association with Williams, who, as we point out below, was properly convicted.

■ All that the government's evidence established was that Walker may have been guilty of assault under the laws of the state of Missouri. But this fact falls far short of proving that he wilfully obstructed the communication of information relating to a violation of a criminal statute of the United States to a federal criminal investigator. Proof of an assault, without showing the additional requirement of scienter, is insufficient to establish a viable nexus upon which a conviction under § 1510 can be sustained. *Cf.* United States v. Mahanna, 461 F.2d 1110 (8th Cir. 1972). To hold otherwise would allow inferences to be drawn by the process of conjecture or speculation or on mere possibilities. Here the evidence, taken in the light most favorable to the government, is clearly as consistent with innocence as with guilt. *See generally* United States v. Kelton, 446 F.2d 669 (8th Cir. 1971); United States v. Kozak, 438 F.2d 1062 (3rd Cir. 1971); McNeely v. United States, 353 F.2d 913 (8th Cir. 1965).

### No. 72–1250—WILLIAMS' APPEAL

■■ Williams recognizes there was evidence from which the jury could find that he possessed knowledge that Arbelo was an informer for the Federal Bureau of Narcotics and Dangerous Drugs. Indeed, at oral argument able counsel for appellant frankly made this concession, but this appellant gives § 1510 a narrow perspective and would limit its application to a situation where there has been an actual violation of a criminal law of the United States at or before the time the investigator is intimidated or interfered with. Thus, Williams reasons that his conviction cannot stand because the evidence did not prove that before Arbelo was assaulted there had been a violation of a federal statute. More precisely, Williams submits that there is no evidence showing that there had been a sale of heroin by Williams or any other person to Arbelo. We do not view and read § 1510 through such a narrow lens. The statute was enacted for the purpose of extending the protection of the preceding §§ 1503 and 1505, afforded witnesses, jurors, and others in judicial, administrative, and congressional proceedings, to potential informants or witnesses and to those who communicate information to said investigators prior to a case reaching the court. This is clear from the legislative history. See H.R. Rep. No. 685, U.S.Code, Cong. & Adm. News, 90th Cong., 1st Sess., p. 1760; United States v. Kozak, *supra*, 438 F.2d at 1065.

This record contains evidence clearly establishing that the sole purpose of Arbelo's mission and activities on the day in question related directly to Williams' illegal trafficking in hard narcotics. Arbelo had been furnished with money by the agents of the Federal Bureau of Narcotics and Dangerous Drugs; they had equipped him with a monitoring device; he was under surveillance by the agents; he planned to and did meet Williams for the purpose of making a purchase. This is shown by Arbelo's testimony as follows:

A  I met Mr. Williams on 31st and Prospect for the purpose of making a purchase of heroin.

Q  What discussions did you have with Mr. Williams when you met him at 31st and Prospect?

.    .    .    .    .

A  I informed him I had $300.00 and that I wanted to buy three spoons of heroin.

Q  And what reaction if any, did Mr. Williams have to that request?

.    .    .    .    .

A  He talked to me for a few minutes and informed me that he had to inquire about a name. He went back to a car that he was in, and then he came back and told me that we would have to go to the Club as far as making a purchase.

Q  Did he indicate to you that he had the heroin at the Club?

A  Yes, sir, he did.

Although the contemplated sale at the Club did not materialize, it cannot be denied that the information obtained from Williams, which had not previously been communicated to the narcotics agents, could have proved valuable to the agents in their investigation of proscribed narcotic activities. Without further discussion, we hold that the facts of this case plainly bring it within the ambit of § 1510. Consequently, the court properly submitted the case against Williams to the jury and its verdict finding him guilty is responsive to substantial evidence.

Appellant also submits as a contention of error that the government's evidence is as consistent with innocence as with guilt and consequently, the court should have granted his motion for acquittal. We disagree. This argument is allied with Williams' first claim, to wit, that unless Arbelo gained some evidence of a federal violation while at the Club, such as a purchase of narcotics, the government's case must fail. We have demonstrated the evidence was sufficient to bring this case within the ambit of § 1510. There being an issue of fact presented, *i. e.*, whether Arbelo acquired information from Williams *relating* to a violation of the narcotic laws, the court was fully warranted in permitting the jury to resolve that fact. The identical contention was raised in United States v. Kozak, *supra*. In rejecting the argument the *Kozak* court properly recognized the principles applicable when such a contention is relied upon. 438 F.2d at 1067.

Williams' final point is aimed at the verdict directing instruction. Again, it is keyed to the claim of insufficient evidence discussed above. We find the submission was proper and no error resulted.

Judgment affirmed as to Williams, reversed as to Walker.