UNITED STATES of America, Appellee,

v.

Donaciano L. PECINA, Appellant.

Nos. 74–1058 and 74–1059.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1974.

Decided Aug. 1, 1974.

Certiorari Denied Dec. 16, 1974. See 95 S.Ct 660.

---

GIBSON, Circuit Judge.

Defendant, Donaciano L. Pecina, was charged in two separate indictments; the first charged defendant in four counts with stealing women's clothing, possessing the same clothing, stealing men's coats, and possessing the same coats,[1] and the second charged defendant with injuring Jerome Daniel (Dan) McFarland, a Government informant in violation of 18 U.S.C. § 1510.[2] The trial of the two cases was consolidated, and the jury found defendant guilty of stealing and possessing the women's clothing and of injuring the Government informant. The District Court[3] sentenced defendant to concurrent sentences of five years on each of the three counts on which defendant was found guilty.

On appeal defendant advances one argument concerning his conviction for the two counts under 18 U.S.C. § 659: "[T]here was no evidence introduced connecting the defendant with the theft [of the women's clothing] from the truck, nor with any property that was demonstrated to have been stolen from the Yellow Freight Truck Systems." Second, defendant argues that he cannot be convicted of violating 18 U.S.C. § 1510 because the injury of Dan Mc-

Lewis E. Pierce and William E. Shull, Kansas City, Mo., for appellant.

Bert C. Hurn, U. S. Atty., and Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before GIBSON, BRIGHT, and WEBSTER, Circuit Judges.

1. These four counts were all in violation of 18 U.S.C. § 659, which provides in pertinent part:

Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any * * * motortruck, or other vehicle * * * with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, or express or other property; or

Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been embezzled or stolen * * *

* * * * *

Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both * * *.

2. That section reads:

(a) Whoever willfully endeavors by means of bribery, misrepresentation, intimidation, or force or threats thereof to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator; or

Whoever injures any person in his person or property on account of the giving by such person or by any other person of any such information to any criminal investigator—

Shall be fined not more than $5,000, or imprisoned not more than five years, or both.

(b) As used in this section, the term "criminal investigator" means any individual duly authorized by a department, agency, or armed force of the United States to conduct or engage in investigations of or prosecutions for violations of the criminal laws of the United States.

3. The Honorable Elmo B. Hunter, United States District Judge, Western District of Missouri.

Farland occurred after judicial proceedings had been instituted.

Defendant was a truck driver for the Yellow Freight Systems, Inc., which the FBI knew had been experiencing theft losses. On January 18, 1971, defendant was driving a truck containing women's clothing which was being transported from a California manufacturer to two retail stores in two Kansas towns. Defendant stipulated that the clothing was moving in interstate commerce and that his "shipping" sheet for January 18, 1971, reflected $3,800 of missing women's clothing.

On January 20, 1971, Dan McFarland, the Government informant, purchased two dresses bearing the same California manufacturer's labels as the missing dresses from defendant at his home for one-third of the retail price. McFarland showed Special Agent Allen Rotton of the FBI these two dresses, and one of the dresses was admitted into evidence. When McFarland purchased these two dresses, he also noticed a carton with one of the Kansas retailer's name stamped on it and a clothing rack containing similar dresses. Further, McFarland saw another man purchase a similar dress from defendant at the same time.

On January 20, 1971, FBI agents searched defendant's home and seized certain clothing. On February 3, 1971, defendant was charged with stealing and possessing the women's clothing, but these charges were dismissed by the Government after a federal district court on June 11, 1971, suppressed the evidence seized in the January 20th search. The Government did not appeal the adverse suppression ruling. The dress purchased by McFarland and introduced into evidence at trial was not subject to the suppression order. The case remained under investigation, and Dan McFarland during August, 1971,

gave the FBI information concerning defendant's connection with the allegedly stolen men's coats.

Defendant tried at different times to find out the identity of the Government informant from Special Agents Rotton and Jack Knox and told Rotton that "he felt like killing the guy" for informing on him. At defendant's basement garage on January 23, 1972, defendant shot McFarland three times. Defendant claimed that McFarland drew a gun and a struggle occurred resulting in the shots that injured McFarland. McFarland testified that defendant shot him in the back first and a struggle occurred with the two other firings resulting. During his appearance before the United States Magistrate on January 24, 1972, and after defendant's arrest, defendant denied having fired a gun since 1961. A nitrate swab test administered by federal agents on January 24th showed gunpowder traces on defendant's right hand.

Reviewing the sufficiency of the evidence for the convictions of the charges in the first indictment, we hold that there was sufficient evidence for the jury to find that defendant stole and possessed the women's clothing worth over $3,800.[4]

■■ First, the evidence was sufficient to demonstrate that defendant converted the women's clothing with the requisite intent. Defendant stipulated that his shipping statement showed a large quantity of missing women's dresses. McFarland bought two women's dresses at one-third the market value, noticed a rack of similar dresses at defendant's home, and observed a sale by defendant to another individual. Special Agent Rotton observed the two dresses purchased by McFarland, which bore the same labels as the missing dresses. Such circumstantial evidence is relevant to prove that defendant stole the wom-

---

4. All reasonable inferences tending to support the jury's verdict and all conflicts in the evidence are resolved on appeal in favor of the verdict. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Aron v. United States, 382 F.2d 965, 970 (8th Cir. 1967).

en's clothing. United States v. Yates, 470 F.2d 968, 970 (10th Cir. 1973); Rice v. United States, 411 F.2d 485, 489 (8th Cir. 1969). The Government also has the benefit of the inference that defendant's possession of recently stolen goods, unless the possession is accounted for in a reasonable and satisfactory manner, indicates that defendant converted the goods with the requisite criminal intent. United States v. McCoy, 472 F.2d 704, 706 (6th Cir.), cert. denied sub nom. Matney v. United States, 412 U.S. 921, 93 S.Ct. 2741, 37 L.Ed.2d 147 (1973). We, therefore, find that there was sufficient evidence for the jury to convict defendant of stealing the women's clothing.

Second, much of the same evidence provides sufficient proof that defendant possessed the stolen women's clothing. In addition, an inference that defendant knew the goods were stolen may be made from the fact that the defendant had in his possession recently stolen goods, unless the possession of those goods is explained in a reasonable and satisfactory manner. United States v. Dugan, 477 F.2d 140, 142 (8th Cir. 1973), *citing* Aron v. United States, 382 F.2d 965, 970 (8th Cir. 1967). The defendant's shipping statement with the missing dresses was dated January 18, 1971, and McFarland purchased the two dresses with the same labels as the missing dresses on January 20, 1971. Clearly, the inference is allowable under these facts. Also, the fact that the goods were sold cheaply strongly implies that defendant possessed stolen goods that had to be quickly fenced. United States v. Werner, 160 F.2d 438, 443 (2d Cir. 1947). The evidence was more than sufficient to convict defendant of possession of the stolen dresses under § 659.

Last, defendant argues that his conviction is improper under 18 U.S.C. § 1510 since judicial proceedings had begun prior to the January 23, 1972, shooting of Dan McFarland. Defendant relies on United States v. Cameron, 460 F.2d 1394, 1401 (5th Cir. 1972), which stated:

> This Report [H.Rep.No. 658, 1 U. S.Code Cong. & Admin.News 1760 90th Cong. 1st Sess. 1967] makes clear that Section 1510 was designed to deter the coercion of potential witnesses by the subjects of federal criminal investigations prior to the initiation of judicial proceedings.

Neither *Cameron* nor the legislative history of § 1510 aid defendant in this case. First, *Cameron* held that § 1510 was inapplicable because there was no informant or "person who has information as to the offense which some third party endeavors to prevent communication of to" a criminal investigator. United States v. Cameron, *supra* at 1401. Here McFarland clearly was an informant to the FBI. Second, the legislative history of § 1510 indicates, as this court has held, that it "was enacted for the purpose of extending the protection of the preceding §§ 1503 and 1505, afforded witnesses, jurors, and others in judicial, administrative, and congressional proceedings, to potential informants or witnesses and to those who communicate information to said investigators prior to a case reaching the court." United States v. Williams, 470 F.2d 1339, 1343 (8th Cir.) cert. denied, 411 U.S. 936, 93 S.Ct. 1912, 36 L.Ed.2d 396 (1973).[5] At the time of defendant's shooting of McFarland, there were no charges filed against defendant. In August or September, 1971, the Government had decided not to appeal the adverse suppression ruling involving the earlier charges of only stealing and possessing the women's clothing. The Government dismissed those charges during the fall of 1971. Once charges have been dismissed against a defendant, § 1510 should again be available to protect informants and potential witnesses be-

---

5. *Williams* also rejects defendant's argument that the Government must prove that defendant has violated a criminal statute be-

fore § 1510 applies. United States v. Williams, *supra* at 1343.

fore the initiation *again* of judicial proceedings. On January 23, 1972, McFarland was a Government informant and potentially a witness. It is clear that the charge under § 1510 was proper under the facts of this case and that defendant shot McFarland because of defendant's belief or suspicion that McFarland informed FBI agents about defendant's thievery.

Judgments of conviction affirmed.