UNITED STATES of America, Plaintiff-Appellee,

v.

Louis SAN MARTIN, Defendant-Appellant.

No. 74–2601.

United States Court of Appeals, Fifth Circuit.

June 26, 1975.

318

Abel H. Rigau, Donald G. Doddington, Tampa, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., D. Frank Winkles, Asst. U. S. Atty., Jacksonville, Fla., Claude Tison, Jr., Asst. U. S. Atty., Tampa, Fla., Ernst D. Mueller, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before TUTTLE, COLEMAN and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The controlling question raised by this appeal is the sufficiency of the evidence to support a conviction for obstruction of a federal criminal investigation in violation of Title 18, U.S.C., § 1510.[1] We find the challenge to be meritorious and reverse.

Appellant Louis San Martin was indicted and tried with Fernando Vergara for attempting to rob a federally insured bank and for assaulting a bank employee in the course of that attempt, in violation of Title 18, U.S.C., § 2113(a) and (d).[2] San Martin was also indicted for obstruction of a criminal investigation into the whereabouts of two witnesses in the robbery case, Debbie del Castillo, later his wife, and Bridgette del Castillo, Debbie's six-year old daughter. At a trial of the combined charges, a jury acquitted San Martin and Vergara on the two bank-related offenses but convicted San Martin for the § 1510 violation. This appeal followed.

Viewed in the light most favorable to the government, Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704, the salient facts are as follows. Debbie del Castillo, then living with appellant, appeared under subpoena before a federal grand jury on August 14, 1973. Despite a second grand jury subpoena for Debbie and her young daughter, Bridgette, issued after San Martin's indictment,[3] the F.B.I. was unable to locate the two del Castillo females in order to serve the subpoenas.

The F.B.I. began investigating a possible violation of Title 18, U.S.C., § 1503, impeding or interfering with a witness.

As part of its investigation, the F.B.I. contacted Pauline Hollis, Debbie's mother, who last saw her daughter on September 24, 1973, two weeks after Debbie and San Martin were married on September 8. In attempting to locate Debbie, the F.B.I. remained in active contact with Mrs. Hollis and, less frequently, with Debbie's two sisters, Linda Shattles and Judy Leugers, but without result.

Mrs. Hollis, increasingly concerned by Debbie's absence, sought out the appellant and told him she wanted to hear from her daughter. He told her she might get a letter. Thereafter, she told the appellant's father, Jimmy San Martin, Sr., that she wanted to write Debbie. In his son's presence, the father told her to bring letters for delivery to him, which she did. In her mailbox she thereafter found a total of five letters from Debbie unstamped and without postmark, at least one of which was responsive to her letters. In sum, this evidence showed that Mrs. Hollis was aware that the appellant and his father knew the whereabouts of Debbie and Bridgette, or at least were in contact with them.

There was also evidence from which the jury could find that Louis San Martin knew that the F.B.I. was looking for his wife.

The incident giving rise to this obstruction prosecution occurred on October 18, 1973. At 10:00 A.M. on that day Linda Shattles and Judy Leugers visited Jimmy San Martin, Sr., and told him

1. Section 1510 provides:

(a) Whoever willfully endeavors by means of bribery, misrepresentation, intimidation, or force or threats thereof to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator; or

Whoever injures any person in his person or property on account of the giving by such person or by any other person of any such information to any criminal investigator—

Shall be fined not more than $5,000, or imprisoned not more than five years, or both.

(b) As used in this section, the term "criminal investigator" means any individual duly authorized by a department, agency, or armed force of the United States to conduct or engage in investigations of or prosecutions for violations of the criminal laws of the United States.

2. Frank Mendez, also charged with San Martin and Vergara, was never apprehended.

3. Bridgette had written defendant's nickname, Lulu, on a rock she had given him which was used to simulate a bomb in the robbery attempt.

that their mother was upset, needed to have some word from Debbie, and needed to find out where she was. They were ushered out and shortly thereafter arranged to meet with the F.B.I. In the early afternoon, an F.B.I. agent served defendant's father with a grand jury subpoena. Mrs. Hollis testified that at 2 or 3 P.M., she received the following telephone call from the appellant:

"Pauline, this is Lulu."

"Yes?"

"Where are your daughters, Linda and Judy?" (or, "your other daughters, Linda and your other daughter.")

"Well, I don't know."

"Well, they have caused my father to get a subpoena and *you've seen 'em for the last time.*" (Emphasis added).

Mrs. Hollis assured herself of the safety of her daughters and then reported the incident to the F.B.I.

This telephone call from defendant was the basis of Count Three of the indictment upon which Louis San Martin was convicted. It charged that he

by means of intimidation and threats of force, wilfully did endeavor to obstruct, delay, and prevent Pauline Hollis from communicating information relating to a violation of a criminal statute of the United States, that is, Title 18, United States Code, Section 1503, to Special Agents of the Federal Bureau of Investigation, duly authorized by said Department to conduct and engage in investigations of violations of said statute and who were then conducting and engaging in such investigation, as Louis San Martin well knew; all in violation of Title 18, United States Code, Section 1510.

■ Title 18, U.S.C., § 1510 "was designed to deter the coercion of potential witnesses by the subjects of federal criminal investigations prior to the initiation of judicial proceedings". United States v. Cameron, 5 Cir. 1972, 460 F.2d 1394, 1401. See 1967 U.S. Code Congressional and Administrative News, pp. 1760–63. The statute was intended to close a loophole in former laws which protected witnesses only during the pendency of a proceeding. See 1967 U.S. Code Congressional and Administrative News, p. 1760; Title 18, U.S.C. §§ 1503 and 1505.

■■ A literal reading of the provision of the statute under consideration indicates that it is aimed at deterring interference with future communication of information. It does not prohibit the making of a threat, as opposed to the infliction of bodily injury, in retaliation for having communicated information to a criminal investigator, at least where such a threat cannot be interpreted as having been intended to interfere with future communication of additional information or with continued cooperation. The legislative history also recognizes that the rubric that criminal statutes are to be strictly construed applies equally to obstruction of justice and criminal investigation statutes, see 1967 U.S. Code Congressional and Administrative News, p. 1761, citing Haili v. United States, 9 Cir. 1958, 260 F.2d 744, and supports our reading of the statute.

The jury was accordingly instructed on the three essential elements of the offense: (1) an act by the defendant of wilfully endeavoring, by means of intimidation and threats of force, to prevent the communication of information relating to a violation of the federal criminal laws; (2) the action must have been taken to prevent the communication from being made to an individual authorized to conduct or engage in investigations of such violations; and (3) the knowledge by the defendant that the recipient or intended recipient of the information was a criminal investigator, as defined. See United States v. Williams, 8 Cir. 1973, 470 F.2d 1339, cert. denied, 411 U.S. 936, 93 S.Ct. 1912, 36 L.Ed.2d 396; United States v. Cameron, 5 Cir. 1972, 460 F.2d 1394; United States v. Kozak, 3 Cir. 1971, 438 F.2d 1062, cert. denied, 402 U.S. 996, 91 S.Ct. 2180, 29 L.Ed.2d 162.

■ In order to prove the defendant's motive in making the threat, the second and sole element of concern on this ap-

peal, the government had to prove that San Martin knew or reasonably believed that Pauline Hollis had information which she had given or would give to F.B.I. agents and that he called and threatened her in response to that belief, in order to prevent, obstruct, or delay further communications. See *Kozak,* supra.

 The government argues that the threat was made in an effort to prevent Pauline Hollis from communicating with the F.B.I. and presents in the alternative the theories, (1) that the jury could conclude that San Martin believed Pauline Hollis herself and her daughters had already communicated with the F.B.I. as to information in the possession of the appellant and his father, since Louis San Martin called her, and that the purpose of the threat was to forestall communication of further information; or (2) that the jury could conclude that Louis San Martin believed that the subpoena was connected with information furnished only by the daughters and that the telephone call was specifically intended to make certain that Mrs. Hollis would not communicate the information possessed by her.

In support of its first theory, the government views as self-evident the proposition that the appellant believed there was a causal connection between the subpoena, the visit of the daughters, and Pauline Hollis, or he would not have called her, in spite of the fact that in the call he attributed the issuance of the subpoena to Judy and Linda only. While this appears tenuous in view of the language of the threat, we accept for present purposes the proposition that "Lulu" wanted to kill either Pauline or her daughters, or both,[4] because he attributed the subpoena of his father to information Mrs. Hollis provided, or that the jury could so infer.

The government, however, urges that this inference supports a further inference that San Martin wished to prevent

further communications by Mrs. Hollis, prompting the threatening telephone call. It is at precisely this point that the fragile structure of the government's case falls of its own weight. The only evidence the appellant reasonably could believe that Mrs. Hollis possessed and which he could have been endeavoring to suppress had already been communicated to the F.B.I., "causing" the issuance of the subpoena of Jimmy, Sr. There is no evidence in the record from which a jury could conclude that the appellant knew or reasonably believed that Mrs. Hollis had any additional information not already communicated to the F.B.I., other than the threat itself. There is thus no basis whatever in the record for the jury to infer that the purpose of the call was to deter *future* communications. Even accepting the doubtful causal connection asserted by the government, the language used and the circumstances surrounding its use may be viewed as no more nor less than a threat of retaliation for damage resulting from past communication, a promise that "I'll get you for that." Such an act, however despicable or deplorable, is outside the scope of § 1510.

The government's alternative theory, that San Martin believed the daughters had spoken with the F.B.I. and was trying to forestall Pauline Hollis from communicating with them as well, is refuted by a simple examination of the threatening statement. It stretches the imagination beyond permissible limits to suggest that threatened retaliation for past communications of the daughters constituted a veiled threat to block future communication by the mother, especially where the defendant could not have believed the mother had information which Judy and Linda had not already conveyed. The damage, if it is viewed as damage, was already accomplished. In this connection we observe that there was no indication of an intent to persuade the mother or daughters to recant and no

4. The words, "You'll never see them again" are susceptible to the meaning that she would disappear, that the daughters would, or that all three would.

hint of physical harm conditioned upon future action or inaction. At the risk of laboring the obvious we repeat that the threat was simply an expression of intent to inflict harm because of past actions. There is no evidentiary foundation for an inference that the appellant was threatening the mother as to any future giving of information to the F.B.I. The government failed to prove a case under the statute, as construed by this and other courts.[5] See *Cameron,* supra, *Williams,* supra, *Kozak,* supra.

The appellant's conviction is reversed with directions to dismiss the indictment.

Reversed.

---

**5.** For another chapter in Louis San Martin's recent difficulties with the Federal Bureau of Investigation, see United States v. Louis San Martin, 5 Cir. 1974, 505 F.2d 918.