**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**J. J. KOEHLER, Defendant-Appellant.**

**No. 76–1146.**

United States Court of Appeals,
Fifth Circuit.

Jan. 10, 1977.

Gordon J. Kroll, Houston, Tex. (Court-appointed), for defendant-appellant.

Edward B. McDonough, Jr., U.S. Atty., Mary L. Sinderson, George A. Kelt, Jr., Carl Walker, Jr., James R. Gough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before AINSWORTH and CLARK, Circuit Judges, and HUGHES, District Judge.

AINSWORTH, Circuit Judge:

The principal issue presented on this appeal is whether an indictment charging appellant Koehler with obstructing justice in violation of 18 U.S.C. § 1510[1] was brought under the proper criminal statute under the facts of the case. The indictment reads:

"On or about September 12, 1973, in the Houston Division of the Southern District of Texas and within the jurisdiction of this Court, defendant J. J. KOEHLER did willfully endeavor by force and intimidation to obstruct and to prevent a communication of information relating to a violation of a criminal statute of the United States by a person to a criminal investigator, to-wit: said defendant assaulted one Jose Hernandez for the purpose of obstructing and preventing the said Jose Hernandez from communicating information relating to violations of Title 21, United States Code, Sections 841 and 952, to an agent of the United States Department of Justice, Drug Enforcement Administration. (Violation: Title 18, United States Code, Sections 1510 and 2)."

Appellant Koehler contends that 18 U.S.C. § 1503[2] rather than Section 1510 is the proper statute under which the indictment might have been brought and therefore that the indictment under 18 U.S.C. § 1510 is invalid. We do not agree.

The evidence at trial shows that prior to the initiation of the present indictment, Koehler and approximately thirty other persons, including Jose I. Hernandez and Ezekiel Palacios, were indicted on a fifty-count drug conspiracy indictment. Koehler, Hernandez and Palacios thereafter were detained at the Harris County Rehabilitation Center where Jeffrey Friend, a Special Agent of the Drug Enforcement Administration, interviewed Hernandez on September 10, 1973 relative to the drug conspiracy. Two days later Hernandez was severely

---

1. Section 1510 reads in pertinent part:

"(a) Whoever willfully endeavors by means of bribery, misrepresentation, intimidation, or force or threats thereof to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator; or

"Whoever injures any person in his person or property on account of the giving by such person or by any other person of any such information to any criminal investigator—

"Shall be fined not more than $5,000, or imprisoned not more than five years, or both."

2. Section 1503 reads:

"Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States magistrate or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

beaten by Palacios and appellant Koehler, which incident was witnessed by several inmates of the Rehabilitation Center. Hernandez testified that Koehler told him the reason for the beating was that Hernandez was helping the Government make up the conspiracy case by "snitching." Hernandez expressed a continuing fear after he "started trying to help the Government" because Koehler had people try to kill him. Another government witness testified that during the course of the beating Hernandez was told by Palacios "that he was never going to snitch again."

Appellant Koehler contends that a violation under 18 U.S.C. § 1510 for which he was indicted is concerned with the obstruction of justice prior to the initiation of judicial proceedings, and not subsequent thereto. He contends that since the alleged beating occurred subsequent to his indictment in the drug conspiracy case, 18 U.S.C. § 1503 is the pertinent statute under which the indictment should have been brought. In support of his position Koehler refers us to the legislative history [3] of Section 1510 and our decisions in *United States v. San Martin*, 5 Cir., 1975, 515 F.2d 317, and *United States v. Cameron*, 5 Cir., 1972, 460 F.2d 1394, which he avers are dispositive of this issue.

Our decisions in *Cameron* and *San Martin* do not preclude the application of Section 1510 to attempts to obstruct justice subsequent to the original indictment.

Under the particular facts of *Cameron* we found that the indictment did not allege an offense under Section 1510. In that case appellant Cameron and his law office associate, Wright, were prospective legal counsel for an individual charged with bank robbery. Cameron allegedly advised Wright to say nothing to FBI agents about the whereabouts of part of the bank robbery proceeds. Upon questioning by the FBI Cameron and Wright falsely denied any knowledge of the funds. Both Cameron and Wright were indicted as accomplices for violating 18 U.S.C. § 1510 by endeavoring "by means of a misrepresentation to obstruct, delay and prevent the communication of information relating to a violation of a criminal statute [18 U.S.C. § 2113, the bank robbery statute] of the United States to a Special Agent of the Federal Bureau of Investigation . . . ." 460 F.2d 1394, 1396. We said that Section 1510 related to the activities of at least three separate individuals or classes of individuals as follows:

A. a criminal investigator; B. the person who has information as to the offense

---

3. House Report No. 658, dated September 21, 1967, explains the purpose of Section 1510:

"Sections 1503 and 1505 of chapter 73, title 18, presently prohibit attempts to influence, intimidate, impede, or injure a witness or juror in a judicial proceeding, a proceeding before a Federal agency, or an inquiry or investigation by either House of the Congress or a congressional committee. However, attempts to obstruct a criminal investigation or inquiry before a proceeding has been initiated are not within the proscription of those sections. The proposed legislation would remedy that deficiency by providing penalties for attempting to obstruct the communication to a Federal penal law, thus extending to informants and potential witnesses the protections now afforded witnesses and jurors in judicial, administrative, and congressional proceedings."

1967 U.S.Code Cong. & Ad.News, p. 1760.

The House Report continues:

"The real need for this legislation is in the difficulty encountered in the presentation of a case for trial in the field of organized crime

and racketeering. It is in these fields that witnesses consistently refuse to cooperate with the prosecution because of threats or other kinds of intimidations directed at them or their families. The ability of organized crime to impose silence on its members and thereby protect both the leaders and the membership of this criminal organization is the primary source of its power and affluence. This strangulation by silence of evidence against the organization has been demonstrated in many cases where potential informants or witnesses have been beaten or tortured or otherwise silenced. There have been instances, according to the Attorney General, where this fear has actually prevented the initiation of proceedings of the matters under investigation. This frustration of criminal investigations and prosecutions should no longer be tolerated, but since there is no statute which presently protects witnesses during the investigative stage, there is need for the enactment of this legislation."

1967 U.S.Code Cong. & Ad.News, p. 1760, at pp. 1761–1762.

which some third party endeavors to prevent communication of to A; and C. the party denounced by the statute who willfully endeavors to obstruct, delay or prevent communication of the information by B to A. We found that because there was no one involved who could fit into the "B" category [the position represented by Hernandez in the present case] Section 1510 was not applicable. Our reason for dismissing the indictment was stated as follows:

"[T]he prosecution charged . . . the somewhat startling proposition that Wright *and* Cameron imposed silence on Wright by misrepresentation. Under neither logic nor law could Wright have been his own victim."

460 F.2d 1394, 1402. (Emphasis in original opinion.)

Koehler contends that since we said in *Cameron, supra,* that House Report No. 658 makes it clear that Section 1510 applies to the coercion of potential witnesses prior to the initiation of judicial proceedings, the indictment here was brought under the wrong statute. However, the question of whether Section 1510 is applicable also to post-judicial proceedings was neither raised nor decided in *Cameron* since the facts in that case did not require a resolution of the issue with which we are concerned here.[4]

Similarly, our decision in *United States v. San Martin,* 5 Cir., 1975, 515 F.2d 317, was not predicated on the application of Section 1510 to post-judicial proceedings. The question raised on appeal was the sufficiency of the evidence to support a conviction under the statute, that is, whether a certain telephone call made by the defendant San Martin after his indictment for attempted robbery constituted a threat proscribed by the statute as an attempt to obstruct justice. We reversed the conviction because of failure by the Government to prove the elements necessary to establish an offense under Section 1510.[5] We held that San Martin's telephone call was made in retaliation for damage to him resulting from past actions of the recipient of the call and that there was "no basis whatever in the record for the jury to infer that the purpose of the call was to deter *future* communications," 515 F.2d 317, 321. (Emphasis in original opinion.)

Unlike *San Martin,* there was evidence here from which the jury reasonably could have concluded that in addition to retaliation for Hernandez' past communication to Special Agent Friend, the purpose of the beating was to prevent future communications. Hernandez still posed a threat to Koehler and was told "he was never going to snitch again." Hernandez testified on direct examination that he continued to help the Government following the alleged beating, and on cross-examination acknowledged having testified as a government witness in the drug conspiracy cases involving Koehler. There was therefore a reasonable basis for the jury to conclude that Hernandez had additional information to convey, that Koehler suspected that he had, and that the reason for the beating was twofold—retaliation for the act done and a threat designed to thwart a repetition of that act.

Appellant's reliance on the legislative history of Section 1510 is misplaced.

---

4. Appellant Koehler relies on the following language in *Cameron*:

"[House Report No. 658] makes clear that Section 1510 was designed to deter the coercion of potential witnesses by the subjects of federal criminal investigations prior to the initiation of judicial proceedings."

460 F.2d 1394, 1401. The basis of our decision in *Cameron* under the peculiar facts of that case was that the statute was "not intended to deal with communications between alleged accomplices to the commission of federal offenses." 460 F.2d 1394, 1401.

5. We listed these elements as follows:

"(1) an act by the defendant of wilfully endeavoring, by means of intimidation and threats of force, to prevent the communication of information relating to a violation of the federal criminal laws; (2) the action must have been taken to prevent the communication from being made to an individual authorized to conduct or engage in investigations of such violations; and (3) the knowledge by the defendant that the recipient or intended recipient of the information was a criminal investigator as defined."

515 F.2d 317, 320.

**1330**

There is no ambiguity in the statute; therefore, there is nothing to construe and there is no need to refer to legislative history. *General Electric Co. v. Southern Construction Co.*, 5 Cir., 1967, 383 F.2d 135. *See also United States v. Sullivan*, 332 U.S. 689, 68 S.Ct. 331, 92 L.Ed. 297 (1948).[6] The provisions of Section 1510 do not exclude its applicability merely because an indictment has been returned or judicial proceedings have been initiated, and there is no precedent in this circuit for so holding.[7] As we said in *San Martin, supra*, "A literal reading of the provision of the statute under consideration indicates that it is aimed at deterring interference with future communication of information." 515 F.2d 317, 320. The evidence at trial proved all the elements of an offense under Section 1510. The indictment likewise contained the elements of the offense, it fairly informed defendant of the charge against which he was to defend, and was sufficiently clear to enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense, thus meeting all constitutional requisites. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). *See also Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. Debrow*, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953). The trial court therefore properly denied the motion for acquittal attacking the validity of the indictment.

 Appellant Koehler's additional contentions that he was deprived of a speedy trial and retrial are without merit. The speedy trial issue was raised in the drug conspiracy case, not in the present proceedings, and was properly resolved against appellant. *Koehler v. United States*, 5 Cir., 1974, 504 F.2d 758. In regard to the appellant's contention regarding the delay following mistrial, the record shows the passage of 88 days between the declaration of mistrial and the commencement of retrial in the instant case. In the interim, however, Koehler was tried on the drug conspiracy case. Justifiable delay, as shown here, relaxes the 60-day minimum provided for retrials by the Plan for the United States District Court for the Southern District of Texas. Moreover no prejudice to defendant has been shown. *See United States v. Clendening*, 5 Cir., 1976, 526 F.2d 842; *United States v. Maizumi*, 5 Cir., 1976, 526 F.2d 848; *United States v. Kopacsi*, 5 Cir., 1976, 540 F.2d 831. We find no error in the refusal of the trial court to dismiss the indictment because of any alleged deprivation of the right to a speedy trial.

AFFIRMED.

---

**6.** Because of the clarity and preciseness of language of Section 1510 it is unnecessary to construe its legislative history. House Report No. 658 [*see* n. 3, *supra*] shows that the purpose of Section 1510 was twofold: (1) to remedy the deficiencies in 18 U.S.C. §§ 1503 and 1505 which pertain to obstruction of criminal investigations subsequent, but not prior, to judicial proceedings; and (2) to prevent organized crime and racketeers from inhibiting witnesses. However, neither of these purposes was incorporated into the statutory language as limitations on the operation of the statute. The statute itself contains no such restrictive phrases as "prior to indictment" or "prior to judicial proceedings," nor does it limit its reach to the category of criminals associated with racketeering or organized crime. Thus Congress

went beyond the declared suggested purposes in enacting the statute into law.

**7.** Appellant Koehler cites various decisions from other courts which, like *Cameron* and *San Martin, supra*, discuss the purpose and legislative history of Section 1510. However, in none of them was an indictment (filed under Section 1503 or 1510) dismissed because of mutual exclusiveness of the statutes. *See United States v. Pecina*, 8 Cir., 1974, 501 F.2d 536 (conviction affirmed); *United States v. Williams*, 8 Cir., 1973, 470 F.2d 1339 (conviction of one defendant affirmed; conviction of second defendant reversed because of absence in proof of scienter required by Section 1510); *United States v. Mitchell*, S.D., N.Y., 1973, 372 F.Supp. 1239 (motions to dismiss indictments denied).