**UNITED STATES of America,**
**Appellee,**

v.

**John J. DALEY, Defendant-Appellant.**
**Nos. 71-1122, 71-1182.**

United States Court of Appeals,
First Circuit.

Jan. 20, 1972.

John D. O'Reilly, III, Framingham, Mass., by appointment of the Court, for appellant.

Henry H. Hammond, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Defendant was convicted by a jury on two counts of embezzling funds from an employee pension benefit plan in violation of 18 U.S.C. § 664 (1970). The indictment, which charged him with embezzlement of $2,540 (Count I) and $850 (Count II), was the third indictment against the defendant for the same offenses, but the only one to come to trial. The defendant raises several issues on appeal.

During the years 1966–1968 the defendant was Business Agent and Financial Secretary of Local No. 33 of the Roofers' Union[1] and was one of the trustees of the "Roofers' Local Union No. 33 Pension Fund." The Fund, established to provide employee retirement benefits from the contributions of employers, was administered by six trustees, three from the union and three from management. Part of this joint administration required that all checks drawn on the Fund's account be co-signed by one trustee from each group.

On separate occasions in May 1966 the defendant negotiated three checks drawn on the Fund's account, totalling $2,540. The checks were made payable to the defendant, who signed his own name and forged the signature of one Leo Wolf, a management-trustee, as co-drawer. These three checks are the substance of Count I. On December 30, 1966, at the strong urging of Wolf, the defendant returned the money by depositing $2,540 in the Fund's account. His repentance was short-lived, however, for in December 1967 the defendant negotiated two more Fund checks, this time totalling

$850 and signed only by himself. These two checks comprise the substance of Count II. Wolf again urged restitution, and on December 31, 1968, $850 was deposited with the Fund.

In the Fund's annual report to the Department of Labor,[2] filed in November 1967 the $2,540 withdrawal was characterized as a "temporary loan," but an amended report, filed in August 1968 listed the $2,540 sum as a loss caused by the fraud or dishonesty of an administrator, and noted that the sum had been recovered from the one who caused the loss. The amended report apparently sparked an investigation by the Federal Bureau of Investigation, which continued until April 1969. On August 20, 1969, a two count indictment was returned against the defendant.

It is necessary to detail briefly what transpired between the 1969 indictment and the May 10, 1971, trial in view of the defendant's contention that he was denied a speedy trial. Represented by retained counsel, defendant pleaded not guilty at his arraignment on September 15, 1969, and was released on bail. He has been at liberty ever since.[3] When the case was called for trial in November 1969, counsel withdrew because of defendant's noncooperation and nonpayment of fees. Defendant asserted he would retain new counsel, but failed to do so, and on April 13, 1970, applied for court-appointed counsel. The first appointed counsel withdrew due to a conflict of interest, and in May his present attorney was appointed.

Counsel promptly filed a motion to dismiss the indictment for failure to include the word "unlawfully,"[4] and over the government's objection this motion was granted. On July 23, 1970, a second indictment was returned, correcting what had been deemed a fatal defect, and the defendant was arraigned in Sep-

---

1. United Slate, Tile and Composition Roofers Damp and Waterproof Workers Association.

2. Required by 29 U.S.C. § 306 (1970).

3. Bail was granted following the subsequent indictments, and defendant's six

month sentence was stayed pending this appeal.

4. The indictment tracked the language of 18 U.S.C. § 664, but omitted the word "unlawfully."

tember. The trial, initially scheduled for January 1971, was postponed until March due to several continuances requested by the government. The defendant consented to these continuances and at no time moved for a speedy trial.

During February 1971 a Labor Department official noticed that the second indictment incorrectly referred to the Fund as an "employee welfare benefit plan" instead of an "employee pension benefit plan." To correct this error, a new indictment was sought and returned on February 23. Two days later the government moved, pursuant to Rule 48(a) Fed.R.Crim.P.[5] for leave to dismiss the 1970 indictment.

When the case was called for trial in March the government was prepared to proceed under the third indictment, but the defense opposed granting leave to dismiss the second one, and the trial was continued in order to deal with this objection. The defense also moved to dismiss the second indictment for want of prosecution and unnecessary delay under Rule 48(b) Fed.R.Crim.P.[6] The court granted the government leave to dismiss without ruling on defendant's motion, and the defense subsequently moved to dismiss the third indictment for abuse of grand jury process, denial of a speedy trial and under Rule 48(b). This motion was denied, and the three-day trial began on May 10, 1971.

■ Pre-accusation delay (over three years on Count I and over a year and a half on Count II) has no bearing on the sixth amendment right to a speedy trial or on a Rule 48(b) motion. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). These rights relate only to the period between accusation, in the instant case the August 1969 indictment, and trial.

The primary guarantee against bringing overly stale criminal charges is the appropriate statute of limitations, although where pre-indictment delay causes actual prejudice and was intentionally employed by the government to gain a tactical advantage, there may be a violation of due process. United States v. Marion, *supra.* Since neither actual prejudice nor purposeful governmental delay has been shown, the pre-indictment time lapse is irrelevant.

Even disregarding the pre-indictment delay, the twenty-two month delay between the first indictment and trial is alleged to violate the right to a speedy trial, especially when coupled with the government's eleventh hour, allegedly "unjustified" change in indictments. The defendant contends that both the 1970 and 1971 indictments should have been dismissed under Rule 48(b).

The 1970 indictment was dismissed pursuant to the government's Rule 48(a) motion, made at a time when a superseding indictment was pending and unchallenged and when the government had no interest in prosecuting under it. In these circumstances, not to have granted leave to dismiss under Rule 48(a) would have been an abuse of discretion. *See* Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

■ Defendant's motion to dismiss the 1971 indictment more directly raises the speedy trial issue. This court has rejected any per se approach to the speedy trial guarantee which would hold or presume a violation solely due to the passage of time. United States v. De-Leo, 422 F.2d 487, 494 (1st Cir.), cert. denied, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970). What constitutes a speedy trial is relative, depending on the circumstances of each case. United

---

5. "Rule 48. *Dismissal*
    "(a) *By Attorney for Government.* The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant."

6. "Rule 48. *Dismissal*
    "(b) *By Court.* If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

States v. Ewell, 383 U.S. 116, 120, 86 S. Ct. 773, 15 L.Ed.2d 627 (1966). Three factors are relevant to this consideration: the length of the delay, the effect thereof on the defendant before and at trial, and the nature of the government's conduct in prosecuting the case. United States v. DeLeo, *supra*. Additionally, regardless of the presence of these three factors, we have recognized that dilatory actions by the defense may manifest a determination that tangible benefits to the defense outweigh the intangible adversities occasioned by delay, and may amount to a waiver of the right to a speedy trial. *See* United States v. Butler, 426 F.2d 1275 (1st Cir. 1970); Fleming v. United States, 378 F.2d 502 (1st Cir. 1967). *See also* Dickey v. Florida, 398 U.S. 30, 48–50, 90 S.Ct. 1564, 26 L.Ed.2d 26 (Brennan, J., concurring).

■■ ■■ Of the twenty-two months' delay in the instant case, nine (September 1969 to May 1970) were caused by the defendant's difficulties obtaining counsel. Of this he may not complain. As to the remaining thirteen months' delay, we are mindful that

> "the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. . . . Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy and create anxiety in him, his family and his friends" United States v. Marion, *supra* 92 S.Ct. at 463.

While at least some such adverse effects would appear inherent in every trial delay, where, as here, there has been no allegation or evidence of any inconvenience, public embarrassment, or manifestations of prejudice the overall

adverse effect can be assumed to be insubstantial. Nor, importantly, is there any indication that the government was improperly motivated in its conduct of the case. Consequently, while the delay between indictment and trial was greater than we think appropriate, we hold that the delay did not violate the defendant's sixth amendment right to a speedy trial in the absence of serious prejudice or improper government conduct. We need not consider whether defendant's actions amounted to waiver.

■■■■ Defendant's next contention is that the indictment should have been dismissed for duplicity in each count. The negotiation of three checks in Count I and two checks in Count II were each part of continuing schemes of embezzlement.[7] Each count charged only the total sum, not the individual checks, and therefore only a single set of facts was necessary to prove each count. Driscoll v. United States, 356 F.2d 324 (1st Cir. 1966), vacated on other grounds, 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1968), is not in point for the duplicitous count in that case charged the failure to file a series of returns as required by two separate paragraphs of a statutory section. The failure to file each form was construed as a separate offense, whereas embezzlement, by its very nature, contemplates that several separate transactions may form a single, continuing scheme, and may therefore be charged in a single count. *Cf.* Cornes v. United States, 119 F.2d 127, 129 (9th Cir. 1941) (scheme to defraud).

■■■■ Defendant's next contention is mentioned only to show that the ingenuity and imagination of the defense attorney know no bounds. He argues that the embezzlement was not from the Fund, but rather from the persons who cashed the checks, and that the Fund's loss was caused by the bank and the Trustees in allowing the improper debit-

---

7. The three Count I checks, each forged in a similar manner, were cashed within a two or three day period. The Count II checks, each negotiated with just one signature, were cashed either on the same or successive days in December 1967.

ing of the Fund's account. All the checks were fully processed, and the Fund's credit with the bank was correspondingly reduced. That the Fund may later recover the money, through civil action, insurance, or restitution, is obviously irrelevant to the criminal charges against the defendant.

Finally, the defendant urges at some length that the evidence was insufficient to establish that the Fund was an "employee pension benefit fund" as described in 29 U.S.C. § 302(a) (2) (1970). We do not think it necessary or helpful to deal individually with each alleged deficiency of evidence. There was ample evidence in the record, including the original trust agreement, annual reports, and testimony on Fund practices, from which the jury could conclude that the Fund met the statutory definition of an "employee pension benefit fund." The court adequately described the statutory elements of such a fund and correctly charged that the burden of proof was on the government. All other points raised by the defendant have been considered and found to be without merit.

Affirmed.