**UNITED STATES of America**

v.

**John J. KEARNEY, Defendant.**

**No. 77 Cr. 245.**

United States District Court,
S. D. New York.

Feb. 9, 1978.

Griffin B. Bell, Atty. Gen. of the United States, Washington, D. C., for the Government; Barnet D. Skolnik, Special Counsel, U. S. Dept. of Justice, Baltimore, Md., Allen R. Bentley, Asst. U. S. Atty., New York City, of counsel.[1]

Williams & Connolly, Washington, D. C., for defendant; Edward Bennett Williams, Washington, D. C., of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Defendant John J. Kearney, a former agent of the Federal Bureau of Investigation ("FBI"), was indicted in a five-count indictment filed on April 7, 1977 charging conspiracy (Counts I and IV), 18 U.S.C. § 371, aiding and abetting the obstruction of correspondence (Counts II and III), 18 U.S.C. §§ 2, 1702, and unlawful wiretapping (Count V), 18 U.S.C. §§ 2, 2511(1)(a), in connection with his investigative responsibilities for the location and apprehension of fugitives associated with the organization known as "Weatherman." Kearney has moved to dismiss the substantive counts of the indictment, challenging Counts II, III and V as duplicitous, and additionally, with regard to Counts II and III, as violative of his Sixth Amendment right to notice "of the nature and cause of the accusation against him" in order to adequately prepare his defense and as barred by the five year statute of limitations provided in 18 U.S.C. § 3282. Oral argument of the motion was heard on January 3, 1978. This opinion was delayed awaiting the filing of a Bill of Particulars, which occurred on February 3, 1978, many months after it had been prom-

ised by the government. (See footnote 1.) This Bill of Particulars shall be placed in the public record upon the filing of this opinion.

 Rule 8(a), F.R.Crim.P., requires that two or more offenses, if contained in the same indictment, be charged "in a separate count for each offense." Duplicity is the joining of two or more separate offenses in the same count in contravention of that Rule. *United States v. Starks*, 515 F.2d 112, 116 (3d Cir. 1975); *United States v. Zolli*, 51 F.R.D. 522, 526 (S.D.N.Y.1970). The prohibition against duplicity has constitutional underpinnings in the Sixth Amendment's guarantee that an accused be adequately "informed of the nature and cause of the accusation" and the Fifth Amendment's interdiction against double jeopardy. *United States v. Zeidman*, 540 F.2d 314, 316 (7th Cir. 1976); *United States v. Tanner*, 471 F.2d 128, 139 (7th Cir.), *cert. denied*, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972). The possibility that a less than unanimous verdict will be returned by the jury is an additional danger sought to be obviated by the Rule. *United States v. Zeidman, supra; United States v. Isaacs*, 347 F.Supp. 743, 755 (N.D.Ill.1972), *aff'd* 493 F.2d 1124 (7th Cir.), *cert. denied, Kerner v. U. S.*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974).

Invoking his right to these protections, defendant asserts that Counts II, III and V are duplicitous since each of these counts contains multiple offenses. These counts charge as follows:

### Count II

From in or about 1971 through June 1972, in the Southern District of New York, JOHN J. KEARNEY, the DEFENDANT, with design to pry into the business and secrets of another, did aid, abet, counsel, induce and procure agents of Squad 47 to take, before delivery to the persons to whom they were directed, letters addressed to persons at 894 Riverside Drive, 900 Riverside Drive, and 674

---

1. The attorneys presently representing the government, with the exception of Mr. Bell, have had absolutely nothing to do with the drafting of the indictment in question nor the

investigation itself. The attorneys who are responsible are still on the staff of the Department of Justice but "have resigned" from this matter.

W. 161st Street, New York, New York, including Russell Neufeld, Phyllis Prentice, Steven Krugman, Laura Foner, Jane Spielman, Sally Stein, Judy Greenberg, Franklin Apfels, Joan Facher, and Mary Bolton, which letters had been in authorized depositories for mail matter.

In violation of Title 18, United States Code, Sections 2 and 1702.

### Count III

From in or about January 1972 through June 1972, in the Southern District of New York, JOHN J. KEARNEY, the DEFENDANT, with design to pry into the business and secrets of another, did aid, abet, counsel, induce, and procure agents of Squad 47 to take, before delivery to the persons to whom they were directed, letters addressed to persons at 217 Thompson Street, New York, New York, including Jennifer Dohrn and Judith Clark, which letters had been in authorized depositories for mail matter.

In violation of Title 18, United States Code, Sections 2 and 1702.

. . . . .

### Count V

In or about April 1972, in the Southern District of New York, JOHN J. KEARNEY, the DEFENDANT, willfully intercepted, endeavored to intercept, and procured agents of Squad 47 to intercept and endeavor to intercept, wire communications of Julie Nichamin and William Price, residing at 61 W. 87th Street, New York, New York, and wire communications of Julie Nichamin and other persons transmitted from public telephones located in the vicinity of 61 W. 87th Street, New York, New York.

In violation of Title 18, United States Code, Sections 2 and 2511(1)(a).

The government acknowledges that Counts II and III encompass numerous mail takings and Count V, several unauthorized wiretaps, with which Kearney might have been separately charged, but argues in justification of the counts that these multiple offenses were not meaningfully completed as individually committed but were part of an overall and continuous scheme of mail takings (Counts II and III) and wire interceptions (Count V) of targeted individuals in order to obtain leads as to the whereabouts of fugitive members of Weatherman. The government also stresses that defendant is charged with aider and abettor liability and that the multiple offenses in issue proliferated from a central core of conduct engaged in by defendant.

██ The doctrine of duplicity is a result-oriented one; it prohibits the charging of multiple offenses in a single count but allows the charging of multiple means constituting a single and continuing offense, even if the components of that single offense may otherwise be treated as separate offenses. *United States v. Zeidman, supra,* at 316–17; *United States v. Tanner, supra,* at 138; *Mellor v. United States,* 160 F.2d 757–762 (8th Cir.), *cert. denied,* 331 U.S. 848, 67 S.Ct. 1734, 91 L.Ed. 1858 (1947); *United States v. Zolli, supra,* at 526. *See also United States v. Kelley,* 395 F.2d 727, 730 (2d Cir.) *cert. denied,* 393 U.S. 963, 89 S.Ct. 391, 21 L.Ed.2d 376 (1968); *Hanf v. United States,* 235 F.2d 710 (8th Cir.), *cert. denied,* 352 U.S. 880, 77 S.Ct. 102, 1 L.Ed.2d 81 (1956).

██ My inquiry into the claim of duplicity must logically begin with an analysis of the statutes defining the offenses charged in order to determine whether these laws, "by their very nature, contemplat[e] that several separate transactions may form a single, continuing scheme, and may therefore be charged in a single count." *United States v. Daley,* 454 F.2d 505, 509 (1st Cir. 1972). I note at the outset that the fact that Kearney is charged with aiding and abetting the offenses charged in Counts II and III does not in and of itself allow the government to charge resultant multiple offenses in one count. 18 U.S.C. § 2(a) provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." Thus, the crime of aiding and abetting contemplates as an element thereof the commission of a single substantive

offense. *See United States v. McCoy*, 539 F.2d 1050, 1064 (5th Cir. 1976); *United States v. Campbell*, 426 F.2d 547, 553 (2d Cir. 1970). Accordingly, an examination of the scope of the substantive offenses with which defendant is charged as an aider and abettor is in order.

18 U.S.C. § 1702 prohibits the taking of . . . any letter . . . out of any . . . authorized depository for mail matter, . . . before it has been delivered to the person to whom it was directed, with design . . . to pry into the business or secrets of another . . .

Defendant has catalogued prosecutions brought under this section to demonstrate that they are based on the theory of either "one letter—one count," i. e., each taking of a single letter is charged in a single count, or "one depository—one count," i. e., each taking from a single depository, despite the amount of discrete pieces of mail involved, is charged in one count. (Kearney's Memorandum in Support of the Motion to Dismiss, pp. 7–9). The government does not dispute the results of this survey, but argues that the requisite intent of taking "with design to pry into the business or secrets of another" contemplates a prohibited scheme. However, intent does not in and of itself define the offense; it is but one component element thereof.

The government further relies on *United States v. Daley, supra, United States v. Kelley, supra,* and *Cohen v. United States,* 378 F.2d 751 (9th Cir.), *cert. denied* 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967), to support the proposition that the prohibition of a scheme need not be expressly contained in the statute defining the offense to survive a charge of duplicity in a count, but those cases do not help the government's position. *Daley* was an embezzlement case in which the total sum embezzled was charged, rather than discrete amounts, (*see* discussion of the *Bins* test, *infra*) and the embezzlement occurred over a particular two or three day period; in *Kelley*, any objection to the count charging numerous phone calls for promoting gambling was

deemed waived by failure of the defense to raise it prior to trial; and *Cohen* concerned charges of several phone calls to assist placing of bets on one particular football game. Here, however, the charges of violation of 18 U.S.C. §§ 1702 and 2 concern takings from depositories over an eighteen-month period letters addressed to at least ten persons at three addresses (Count II) and over a six month period letters addressed to at least two persons at one address. To accept the government's contentions of "one central core of conduct" and "continuous scheme" would virtually obliterate the distinction between substantive offenses and conspiracy, with which Kearney has also been charged in two counts (Counts I and IV) not here in issue.

The government's contention that 18 U.S.C. § 2511(1)(a), prohibiting any person from "willfully intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept or endeavor to intercept, any wire or oral communication," turns on whether defendant acted with the requisite criminal intent is equally unpersuasive. Count V charges Kearney with the unlawful interception of wire communications of two persons at one address, and one named person and others at an unspecified number of public telephones in the vicinity of that address. Again, Kearney's overriding intent, if found to satisfy the prohibitions of that section, will not in and of itself constitute the crime, for it is but one element thereof.

In *Bins v. United States*, 331 F.2d 390 (5th Cir. 1964), the test for determining whether several offenses are involved in a count attacked as duplicitous was defined as "whether identical evidence will support each of them, and if any dissimilar facts must be proved, there is more than one offense." *Id.* at 393. *See also, United States v. Daley*, 454 F.2d at 509; *United States v. Zolli*, 51 F.R.D. at 528. Clearly, the evidence which will support an illegal taking of mail addressed to persons at one of the listed addresses at any particular time in Count II will differ from that to persons at another of the addresses at a

different time; likewise in Count III, notwithstanding that takings from depositories at only one address are charged, differing proof is required to establish each of the purportedly illegal takings. As to Count V, it is manifest that the proof which would support unauthorized wiretapping of the private telephone will differ from that of the public phones. Although these differences are exemplary only, and do not imply that no other disparity in proof is necessitated by the format with which the government has sought to charge Kearney in the disputed counts, their existence suffices to satisfy the *Bins* formulation. The conclusion that these counts are duplicitous as drawn is inescapable.

Moreover, I note in passing that while the government has contended both in its brief and at oral argument that Kearney, by purportedly aiding and abetting these various violations of law, has engaged in but one central core of conduct with the purpose of obtaining leads as to the whereabouts of fugitive members of Weatherman, it has curiously chosen to charge the alleged mail takings in two counts rather than one; and has additionally charged Kearney with two counts of conspiracy relating to mail takings in one count (Count I) and wiretapping in the other (Count IV). This manner of drafting the indictment would appear to contradict the government's position.

Having concluded that Counts II, III and V are duplicitous, I turn to a consideration of the appropriate remedy. The government has suggested that dismissal is improper since a bill of particulars has been filed, and the jury can be instructed that in order to convict Kearney on any of these counts it must unanimously agree to at least one particular incident for each count as violative of the applicable law. In any event, the government contends that the appropriate remedy for duplicity is not dismissal but election.

■ Unless the defects inherent in a duplicitous count have not been obviated by the contents of a bill of particulars or appropriate jury instructions, *see Bins v. Unit-*

*ed States, supra,* 331 F.2d at 393; *United States v. Kelley, supra,* 395 F.2d at 730, it has been held that the appropriate remedy for a duplicitous count is to require the government to elect one of the multiple offenses embraced therein on which to proceed. *United States v. Henry,* 504 F.2d 1335, 1338 (10th Cir. 1974); *see Bins v. United States, supra,* 331 F.2d at 393. Defendant argues that allowing election would usurp the function of the Grand Jury and work a violation of his Fifth Amendment rights. It is manifest that an indictment may not be amended without resubmission to the Grand Jury; *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). However, this Court has the power to withdraw charges from the jury so long as nothing is thereby added to the indictment; this withdrawal is not tantamount to an amendment and thereby raises no Fifth Amendment problem. *United States v. Hall,* 536 F.2d 313 (10th Cir. 1976); *Overstreet v. United States,* 321 F.2d 459 (5th Cir. 1963), *cert. denied,* 376 U.S. 919, 84 S.Ct. 675, 11 L.Ed.2d 614 (1964). Requiring the government to elect merely narrows the charges and withdraws certain of them from the jury's consideration. As such, it presents no Fifth Amendment difficulty.

■ However, election would not obviate the failure of Counts II and III to comply with the Sixth Amendment's notice requirement, notwithstanding the government's furnishing defendant with a bill of particulars, for the bill of particulars fails in its purpose of apprising Kearney of the essential facts of the offenses with which he is charged. *See United States v. Salazar,* 485 F.2d 1272 (2d Cir. 1973), *cert. denied,* 415 U.S. 385, 94 S.Ct. 1579, 39 L.Ed.2d 882 (1974). Count II concerns illegal takings occurring from 1971 through June 1972; Count II charges illegal takings from January 1972 through June 1972. Since any alleged takings which occurred prior to April 7, 1972 are concededly barred by the five-year statute of limitations contained in 18 U.S.C. § 3282, the government has repre-

sented that it would consent to a jury instruction that defendant could not be convicted on either of those counts unless the jury unanimously finds that at least one illegal taking occurred after April 7, 1972. However, the bill of particulars with regard to Counts II and III does not confine the time period to post-April 7, 1972; it simply fails to specify, other than referring to the time periods as broadly charged, either the dates upon which Kearney allegedly aided and abetted the mail takings charged, or the dates upon which these offenses allegedly occurred. Even if the bill of particulars restricted the time period to post-April 7, 1972, the takings encompassed by the charges are theoretically innumerable. Even were the government to elect to proceed on a "one depository—one count" theory, according to both the indictment and bill of particulars this theory would include numerous individual takings on numerous different occasions, making it impossible for defendant to prepare to meet the charges. Contrary to the contentions of the government, Counts II and III of the indictment, as supplemented by the bill of particulars, have wholly failed to "fully, directly and expressly, without uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished," *United States v. Carll*, 105 U.S. 611, 612, 15 Otto 611, 26 L.Ed. 1135 (1881) (*see* Government's Memorandum of Law in Opposition, p. 2). They are thus constitutionally deficient and must be dismissed.[2]

Kearney has not contended that Count V suffers from a similar Sixth Amendment infirmity, and it appears that the duplicitous nature of Count V can be remedied by election. Consequently, the government is directed to elect one offense from the sever-

al charged in that count on which to proceed. This election is to be made by filing a supplemental bill of particulars within seven days of the date hereof. At oral argument the government was unable to make such an election. Indeed, there is some doubt as to whether such an election can be now made. (See footnote 2).

 Accordingly, defendant's motion to dismiss the indictment is granted as to Counts II and III[3] and denied as to Count V; the government is directed to elect, from among the offenses charged in Count V, one alleged offense on which to proceed to prosecute.

SO ORDERED.

---

**2.** It appears from the bill of particulars that the poor draftsmanship of the indictment was caused not only by its inherent imprecision but by a fundamental lack of a proper investigation. For example, the bill of particulars with reference to the wiretapping count, states "the specific dates within April 1972 are unknown." Needless to say, the specific dates of the taps as to each of the various telephones involved are also unknown. Indeed, it would appear that the number of telephones allegedly involved is also unknown. The measure of proof required at a criminal trial is not unknown, at least as far as this Court is concerned.

**3.** By virtue of the provisions of 18 U.S.C. § 3288, dismissal of Counts II and III does not preclude the government from again presenting these charges to the Grand Jury within six months hereof, despite the expiration of the statute of limitations.