**UNITED STATES of America**

v.

**Martin B. ABRAMS, et al., Defendants.**

**No. S 82 Cr. 80 (CES).**

United States District Court,
S. D. New York.

June 21, 1982.

Scott G. Campbell, Asst. U. S. Atty., New York City, for plaintiff.

James M. LaRossa, LaRossa, Brownstein & Mitchell, New York City, for defendant Abrams.

Gustave Newman, Newman & Adler, New York City, for defendant Siegel.

Ronald E. DePetris, New York City, for defendant Pierce.

Richard Weinberg, New York City, for defendant Gold.

Irving Anolik, New York City, for defendant Cotler.

## MEMORANDUM DECISION

STEWART, District Judge:

Following our dismissal of Counts 16–18 of the original indictment for their factual insufficiency, *see United States v. Abrams*, 539 F.Supp. 378 at 390 (S.D.N.Y.1982), the government filed a superseding indictment containing much greater factual detail as to these counts. All five defendants subsequently filed a new set of pretrial motions directed to the superseding indictment. We address each motion in turn.

*Defendant Abrams' Motion to Dismiss Count 16*

Defendant Abrams' motion to dismiss Count 16 of the superseding indictment is denied. The count in question alleges that defendant Abrams violated 18 U.S.C. § 1510[1] by "unlawfully, wilfully, knowingly and corruptly" endeavoring by means of bribery to delay and prevent one Herbert Ristau from communicating information to the Securities and Exchange Commission concerning cash sales to him of Mego merchandise. Defendant Abrams argues that this count is insufficient as a matter of law because it fails to allege the existence of a criminal investigator whose investigation was obstructed by Abrams' alleged conduct, and because it fails to allege that he had actual knowledge of any federal criminal investigator who was investigating Mego. We reject these arguments.

To prove a violation of 18 U.S.C. § 1510, the government must prove beyond a reasonable doubt that (1) the defendant wilfully endeavored by one of the means set forth in the statute to prevent the communication of information relating to a violation of the federal criminal laws; (2) that the action was taken to prevent the communication from being made to a criminal investigator, that is, to an individual authorized to conduct or engage in investigations of or prosecution for such violations; and (3) that the defendant knew that the recipient or intended recipient of the information was a criminal investigator, as defined above. *United States v. San Martin*, 515 F.2d 317, 320 (5th Cir. 1975). Significantly, the government need not prove that a federal criminal investigation was actually taking place to prove a violation of section 1510. *United States v. Zemek*, 634 F.2d 1159, 1176–77 (9th Cir. 1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981); *United States v. Lippman*, 492 F.2d 314, 317 (6th Cir. 1974), *cert. denied*, 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975). Nor need the government prove that the accused had actual knowledge that the obstructed party either conveyed information about the accused or was about to do so. *United States v. Kozak*, 438 F.2d 1062, 1065 (3rd Cir.), *cert. denied*, 402 U.S. 996, 91 S.Ct. 2180, 29 L.Ed.2d 162 (1971). Rather, the *scienter* requirement of section 1510 is satisfied by a showing of a reasonably founded belief that information had been or was about to be given. *Id.* at 1066. *See also United States v. Zemek*, 634 F.2d at 1176; *United States v. San Martin*, 515 F.2d at 321. Thus in this case, the government's failure to allege either the existence of a criminal investigator or actual knowledge that an investigator was investigating Mego does not render the count legally insufficient. The government has alleged all the essential elements of a section 1510 offense with sufficient factual particularity

---

1. 18 U.S.C. § 1510 provides in pertinent part:
 (a) Whoever willfully endeavors by means of bribery, misrepresentation, intimidation, or force or threats thereof to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator . . .
 . . . .

Shall be fined not more than $5,000, or imprisoned not more than five years, or both. (b) As used in this section, the term "criminal investigator" means any individual duly authorized by a department, agency, or armed force of the United States to conduct or engage in investigations of or prosecutions for violations of the criminal laws of the United States.

to allow the defendant to prepare his defense. The motion to dismiss is thus denied.

*Defendants Abrams, Siegel and Pierce's Motion to Dismiss Count 17 as Legally Insufficient*

Defendants Abrams, Siegel and Pierce move to dismiss as legally insufficient Count 17 of the superseding indictment which also charges a violation of 18 U.S.C. § 1510. Defendant Abrams, joined by defendant Siegel and Pierce, argues that Count 17 should be dismissed because it fails to allege that he knew or reasonably believed that the disinterested members of the Audit Committee were about to communicate information to federal criminal investigators. Defendant Pierce reiterates the argument made by defendant Abrams in connection with Count 16 that the failure to allege the existence of a federal investigation at the time of the alleged acts of misrepresentation renders the count legally insufficient. Defendant Pierce also argues that the "charges should be dismissed to the extent that SEC employees constitute federal criminal investigators", asserting that no SEC employee can be a criminal investigator for the purposes of the statute prior to any communication between the SEC and either the United States Attorney's Office or another federal agency whose function is to conduct criminal investigations. We find all these arguments without merit.

On a motion to dismiss, an indictment is to be read in a common sense manner. *United States v. Anderson*, 532 F.2d 1218, 1222 (9th Cir.), *cert. denied*, 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976). This includes reading the indictment to include facts that are necessarily implied by the specific allegations made. *United States v. Silverman*, 430 F.2d 106, 111 (2d Cir. 1970), *cert. denied*, 402 U.S. 953, 91

S.Ct. 1619, 29 L.Ed.2d 123 (1971). In this case, the government has alleged that defendants Abrams, Pierce and Siegel "did unlawfully, wilfully, knowingly and corruptly endeavor by means of misrepresentation to obstruct, delay, and prevent the disinterested members of the Audit Committee of the Mego Board of Directors, its special counsel and the members and employees of his law firm from communicating information relating to a violation of criminal statutes of the United States ... to the United States Attorney's Office, criminal investigators of the Department of Justice, the Securities and Exchange Commission and to other federal criminal investigators." Superseding Indictment at ¶ 18. Fairly read, this allegation necessarily implies that defendant Abrams, Pierce and Siegel knew or reasonably believed that the members of the committee were about to communicate information to criminal investigators. One simply cannot "wilfully obstruct" or "knowingly prevent" an act without knowing, or at least reasonably believing, that that act is about to happen.

As to defendant Pierce's argument concerning the nonexistence of a federal criminal investigation at the time of his alleged misrepresentation, we repeat the point made in response to defendant Abram's objections to Count 16: to prove a violation of section 1510, the government need not prove that an investigation was actually taking place. *See United States v. Zemek*, 634 F.2d at 1176–1177; *United States v. Lippman*, 492 F.2d at 317. Contrary to defendant Pierce's suggestion that this conclusion has "no basis in the legislative history" of section 1510, *see* Memorandum of Law in Support of the Omnibus Motion for Pretrial Relief at 8, we find that this result comports with the express intent of the House Committee that recommended its passage.[2] Nor do we find that *United*

---

2. The House Committee on the Judiciary thus described the purpose of S. 676 (the future 18 U.S.C. § 1510) as being to

provid[e] penalties for attempting to obstruct the communication to a Federal penal law [sic], thus extending to informants and *potential* witnesses the protections now afford-

ed witnesses and jurors in judicial, administrative and congressional proceedings.

H.R.Rep.No.658, 90th Cong., 1st Sess., *reprinted in* 1967 U.S.Code Cong. & Ad.News 1760 (emphasis added). The analysis of the bill contained in the committee report further indicates that the proscriptions of section 1510 "apply to

*States v. Grande*, 620 F.2d 1026 (4th Cir.), *cert. denied*, 449 U.S. 830, 101 S.Ct. 98, 66 L.Ed.2d 2035 (1980), cited by defendant Pierce, requires dismissal of this count. *Grande* reversed a conviction under section 1510 for insufficiency of proof that the defendant had known that the threatened individual was about to give information to a *federal* investigator, as opposed to any other law enforcement official. *Id.* at 1037. In this case, however, the government has specifically alleged that defendants prevented certain individuals from communicating information to federal agents. Accepting these allegations as true for the purposes of this motion, the indictment is sufficient under *Grande*.[3]

■ We do not accept defendant Pierce's argument that, as a matter of law, no employees of the SEC could possibly constitute federal criminal investigators for the purposes of this case. The Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, and the Securities Exchange Act of 1934, 15 U.S.C.

§ 78a *et seq.*, "explicitly empower the SEC to investigate possible infractions of the securities laws with a view to both civil and criminal enforcement". *Securities & Exch. Comm'n v. Dresser Industries*, 628 F.2d 1368, 1376 (D.C.Cir.), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). Since section 1510(b) defines a "criminal investigator" as "any individual duly *authorized* ... to conduct or engage in investigations of or prosecutions for violations of the criminal laws of the United States" (emphasis added), SEC employees would appear to fall within the statutory language. At best, therefore, defendant Pierce has raised a question of fact concerning the status of SEC employees in this case, which is, of course, a matter to be left for trial.[4]

### Motions to Dismiss Count 17 as Duplicitous

Defendants Pierce and Abrams also argue that Count 17 is impermissibly duplicitous, that is, that it charges more than one offense in a single count in violation of

protect the communication of information to a Federal criminal investigator *at any time from the commission of a criminal violation or conspiracy* until the institution of judicial proceedings within the meaning of sections 1503 and 1505." H.R.Rep.No.658, *reprinted in* 1967 U.S. Code Cong. & Ad.News at 1763 (emphasis added).

3. We find defendant Pierce's reliance upon *United States v. Williams*, 470 F.2d 1339 (8th Cir.), *cert. denied*, 411 U.S. 936, 93 S.Ct. 1912, 36 L.Ed.2d 396 (1973), in this context similarly misplaced. *Williams* reversed a conviction under section 1510 due to the absence of any proof that the defendant knew the obstructed individual's status as a person about to convey information to federal officers. *Id.* 1342. As noted at pages 1188–1189, *supra,* however, in this case the government has alleged by necessary implication that the defendants knew or reasonably believed the members of the committee were about to communicate information.

4. Abrams also argues that Count 17 must be dismissed under *United States v. Cameron*, 460 F.2d 1394 (5th Cir. 1972), which contains language to the effect that section 1510 was not intended to deal with communications between alleged accomplices. *Id.* at 1401. We find *Cameron* distinguishable. In that case, the Fifth Circuit dismissed a count under section 1510 that alleged that appellant, an attorney, wilfully endeavored to obstruct justice by advising his accomplice-client not to speak to FBI

agents regarding monies in appellant's possession that the client had stolen from a bank. The Fifth Circuit noted that section 1510 contemplates three separate individuals or classes of individuals: (1) a criminal investigator; (2) the person who has information to convey to (1); and (3) the party denounced by the statute who wilfully endeavors by means of misrepresentation, etc. to obstruct, delay, or prevent communication of the information by (2) to (1). Because the government had alleged in *Cameron* that the appellant's client was also his accomplice, the Fifth Circuit concluded that both fell under the third category, and as a consequence, that no one fell within the statute's second group:

In a word, the prosecution charged ... the somewhat startling proposition that Wright *and* Cameron imposed silence on Wright by misrepresentation ... Put another way, if the United States desired to prosecute Cameron under Section 1510 for directing or advising Wright to say nothing about the currency, it should have left Wright out as an accomplice in that enterprise.

*Id.* at 1402. In this case, however, the government has alleged actors in all three categories: (1) criminal investigators; (2) the Audit Committee and special counsel; and (3) Abrams and Stuckey. For *Cameron* to be applicable, the government would have had to have alleged that Special Counsel was an accomplice of Abrams.

Fed.R.Crim.P. 8(a). These defendants note that Count 17 alleges multiple acts of misrepresentation on four separate occasions as constituting the single charge of obstruction of justice. Asserting that the gist of section 1510 is the unlawful endeavor and that each alleged misrepresentation should be viewed as a separate endeavor, they conclude the government has charged four offenses in a single count. We disagree.

 While Fed.R.Crim.P. 8(a) proscribes the charging of more than one offense in one count, Fed.R.Crim.P. 7(c) specifically authorizes alleging in a single count that a single offense was committed by more than one means. The charging of multiple means constituting a single and continuing offense is thus permitted even though the components of that single offense may otherwise be treated as separate offenses. *United States v. Kearney*, 451 F.Supp. 33, 36 (S.D.N.Y.1978). The question that arises, therefore, is whether the statute under which the defendants have been charged " 'by its very nature, contemplates that several separate transactions form a single, continuing scheme, and may therefore be charged in a single count.' " *Id.* (*quoting United States v. Daley*, 454 F.2d 505, 509 (1st Cir. 1972)). The language of 18 U.S.C. § 1510 is significant in this regard. Section 1510(a) proscribes the willful endeavor "to obstruct, delay or prevent the communication of information relating to a violation of" federal criminal laws "by means of" bribery, misrepresentation, threats and the like. The gist of the stat-

ute is thus the endeavor to obstruct; this endeavor may be attempted by several means. The structure of section 1510 is thus distinct from those of the statutes considered in *United States v. Kearney*, 451 F.Supp. at 37 (18 U.S.C. § 1702—obstruction of correspondence) or *United States v. Tanner*, 471 F.2d 128, 138–139 (9th Cir.), *cert. denied*, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972) (18 U.S.C. § 837—transportation of explosives), both cited by defendant Pierce in support of his argument for duplicity here. More similar is 18 U.S.C. § 1503,[5] the obstruction of justice statute, which has been specifically found to warrant charging of multiple means under Rule 7(c). *See United States v. Haldeman*, 559 F.2d 31, 125 (D.C.Cir.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). On this basis, we conclude that the government's charging of a willful endeavor to obstruct the Mego Audit Committee and its special counsel's communication of information to federal investigators by multiple means not impermissibly duplicitous.

*Defendant Siegel's Motion to Dismiss Count 18*

 Defendant Siegel moves to dismiss Count 18 of the superseding indictment ("An Endeavor to Obstruct a Grand Jury Investigation") on the grounds that it fails to allege "that Siegel knew the information being sought from him was being sought for the purpose of presenting it to a federal grand jury" and that it fails to allege that "Siegel was indeed the corporate repository

---

5. 18 U.S.C. § 1503 provides:

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States Commission or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on

account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

for information about safe deposit boxes". We find the count in question legally sufficient. The three elements of an offense under 18 U.S.C. § 1503 [6] are (1) endeavoring; (2) corruptly; (3) to influence an officer of the court or the due administration of justice. *United States v. Fasolino*, 586 F.2d 939, 940 (2d Cir. 1978). Count 18 tracks the language of these elements and gives the defendant notice of the conduct specifically at issue, viz., Siegel's alleged

> endeavor to cause the designated Mego custodian of the records to give false testimony to the aforesaid Grand Jury concerning the deposit of cash into Mego safe deposit boxes by fraudulently misrepresenting to the Mego custodian of records in substance that no cash was ever deposited into Mego safe deposit boxes and that there were no records reflecting any such cash deposits.

Superseding Indictment at ¶ 22. With respect to defendant Siegel's specific arguments upon this motion, we find that the allegations of Count 18 adequately allege by necessary implication, *see United States v. Silverman*, 430 F.2d 106, 111 (2d Cir. 1970), *cert. denied*, 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971), that Siegel knew this information was being sought for the purpose of presenting it to a federal grand jury.[7] The government's failure to allege Siegel's status as the corporate repository for information concerning safe deposit boxes does not render the count legally insufficient, moreover. His status, or lack thereof, as corporate repository may go to the issue of the corruptness *vel non* of his alleged endeavor. For the purposes of this motion to dismiss, however, we must accept the government's allegation of corruptness as true, and accordingly deny this motion to dismiss.

*Motions Directed to the Matuozzi Memorandum*

Defendants Abrams, Gold and Pierce object to the references to and quotations from a memorandum prepared by Norman Matuozzi, Mego's Director of Security, in Count 17 of the superseding indictment. This memorandum ("the Matuozzi Memorandum") purports to summarize a conversation between Mr. Matuozzi and William Stuckey concerning the off-the-books sale of Mego merchandise, and contains Matuozzi's statement (quoted in Count 17): "... we are now in suspect of top level management. I realize also that there will be substantial resistance from those officers. For if these allegations are true, we not only have serious improprieties to deal with but we also might have some federal laws violated." Defendant Gold argues that the memorandum constitutes inadmissible double hearsay and all references to it in the indictment should therefore be stricken as surplusage. Defendant Pierce argues that the memorandum should be suppressed for hearsay reasons, and Count 17 then dismissed for lack of predicate. Defendant Abrams also argues the inadmissibility of the document, and further asserts that even if it could come in for some purpose other than the truth of the matters asserted therein under Count 17, no limiting instruction could cure the prejudicial effect that its admission would have on Counts 1–15 (the wire fraud counts).

 We agree that if sought to be introduced for the truth of the matters asserted therein, the Matuozzi Memorandum may well be inadmissible.[8] Yet it appears that

---

6. See note 5, *supra*.

7. In particular, we note the government's allegation that the grand jury in question was one of the United States District Court for the Southern District of New York, Superseding Indictment at ¶ 20; that in response to a subpoena issued by this grand jury, the Mego custodian of records "attempted to retrieve the requisite information and documents ... by speaking to certain corporate officers, including the defendant Leonard S. Siegel". *Id.* at 21;

and that defendant Siegel then endeavored "to cause the designated Mego custodian of the record to give false testimony *to the aforesaid Grand Jury* concerning the deposit of cash into Mego safe deposit boxes ..." *Id.* at ¶ 27 (emphasis added).

8. The government has suggested several theories for the admission of the Memorandum for the truth of matters asserted: that certain defendants manifested their adoption of its contents, making it admissible under Fed.R.Evid.

the government intends to offer the document to prove matters *other* than the truth of its contents in connection with Count 17. As counsel for defendant Abrams conceded at oral argument, this use of the Matuozzi Memorandum would seem eminently proper. The government suggests the following non-hearsay uses of the document: as proof that "information relating to a violation of [a] criminal statute of the United States" existed; as proof that Mego's special counsel, one of the individuals alleged to have been prevented from communicating to federal investigators by defendants' misrepresentations, possessed such information; as proof that defendants knew of special counsel's information and hence reasonably believed that he would go to federal investigators; and as background for the allegations of defendants' misrepresentations to special counsel.[9] Given the apparent propriety of these proposed uses, we decline to suppress the memorandum or strike references to it in the indictment on the grounds of inadmissibility in connection with Count 17.

▆▆▆▆ Defendant Abrams argues, however, that even if the document is properly admissible, its implications for the wire fraud counts (Counts 1–15) require the severance of Counts 1–15 from Count 17. We disagree. In determining a motion to sever, the trial court must attempt to balance the prejudice to the moving defendant against the prejudice to the public interest caused by the time, expense, delay and duplication of trials. *United States v. Aloi*, 449 F.Supp. 698, 740 (E.D.N.Y.1977) (*citing United States v. Wallace*, 272 F.Supp. 838, 842 (S.D. N.Y.1967); *United States v. Crisona*, 271 F.Supp. 150, 154 (S.D.N.Y.1967)). In this case, we believe the prejudice that defendants will suffer by virtue of the joinder of Counts 1–15 and 17 will be minimal. The gist of defendant Abrams' argument for severance is that the jury will be unable to follow instructions to consider the Matuozzi Memorandum only for the limited purposes for which it will be offered in connection with Count 17 when the government will be attempting to prove by other means for the purposes of Counts 1–15 the truth of the very facts asserted therein. While we recognize that limits exist as to the efficacy of limiting instructions, *see, e.g., Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968), this does not appear to be a case in which those limits will be surpassed. At oral argument, the government indicated its intention to call William Stuckey to testify directly as to the events reported in the Matuozzi Memorandum. We see no reason why a jury could not comprehend and follow the instruction that it should determine the guilt or innocence of the defendants on Counts 1–15 only on the basis of what was recounted to it directly, and not consider Mr. Matuozzi's recollection of what Mr. Stuckey once told him. Given the tentative nature of the conclusions drawn in the Matuozzi Memorandum, moreover, ("For *if* these allegations are true ... we also *might* have some federal laws violated" (emphasis added)) the jurors should be able to understand that it is their conclusions, and theirs alone, that govern on Counts 1–15. While the opportunity to cross-examine a declarant does not render inadmissible hearsay statements admissible, *United States v. Check*, 582 F.2d 668, 680 (2d Cir. 1978), such opportunities can provide additional protections against jury confusion when out of court state-

---

801(d)(2)(B); the business records exception under Fed.R.Evid. 803(6); a prior consistent statement of a witness offered to rebut a charge of recent fabrication under Fed.R.Evid. 801(d)(1)(B); or a recorded recollection under Fed.R.Evid. 803(5). Because the applicability of these theories depend upon highly uncertain developments at trial, we do not rest our decision upon them. By this, however, we do not express any view as to the potential merits of these arguments.

9. With respect to this last point, the government contends that the defendants referred specifically to the Matuozzi Memorandum when they spoke to special counsel, and that it will thus be necessary to introduce the Memorandum to prove exactly what they said to him. The government has indicated that it contemplates proving the falsity of the statements by other evidence in the case. *See Anderson v. United States*, 417 U.S. 211, 220, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974).

ments are offered for purposes other than the truth of the matters asserted therein. *See United States v. Zappola*, 523 F.Supp. 362 at 365 (S.D.N.Y.1981). In this case, the government has indicated that it will call both Stuckey and Matuozzi to the stand. This will allow defense counsel ample opportunity to bring out the shortcomings of the Memorandum both in terms of the limited purposes for which it is offered and its general veracity.

Against the minimal prejudice we foresee for the defendants by virtue of the joinder of Counts 1–15 and 17, we balance the costs the public would incur by severance. These costs include the time and effort required to select two juries, the inconvenience imposed upon witnesses common to the counts, the time spent in trial developing common background material, and further delay in a case in which substantial adjournments have already been granted. Under these circumstances, we strike the balance against severance and deny defendant Abrams' motion to that effect.[10]

*Defendant Cotler's Motion to Suppress Certain Oral Statements*

▆▆▆▆ Defendant Cotler moves to suppress certain oral statements made to an FBI agent while the agent was serving him with a federal grand jury subpoena on the grounds that the agent failed to advise defendant Cotler of his rights to remain silent or to have an attorney present. This motion is denied. As a general matter, the warnings established by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) are required only when the subject is in custody, "or otherwise deprived of his freedom of action in any significant way". *Beckwith v. United States*, 425 U.S. 341, 347, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976) (*quoting Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. at 1612). If special circumstances result in the law enforcement officials overbearing the subject's will to resist and bringing about a confession not freely self-determined, however, the confession may be found involuntary despite the lack of custodial setting. *Id.* at 347–48, 96 S.Ct. at 1616. Defendant Cotler has not alleged in this motion that he was in custody or otherwise deprived of his freedom of action. He has not alleged any coercive actions by the FBI agent. Indeed, the only special circumstance described by his attorney[11] is the fact of his wife's hospitalization. We do not find this sufficient to establish that Cotler's statement was involuntary and in violation of his constitutional rights.

*Defendants' Motions for Bills of Particulars*

▆▆▆ Defendant Abrams requests a bill of particulars with respect to Counts 16 and

---

**10.** We find this case distinguishable from *United States v. Kaplan*, 510 F.2d 606 (2d Cir. 1974), cited by defendant Abrams in support of severance. The facts of *Kaplan* were as follows. "In a prosecution for possession and distribution of heroin, the government sought the admission of a conversation between a government agent (Alleva) and a subsequently deceased individual (Lange) in which Lange had indicated the defendant was Lange's "connection". Finding the conversation inadmissible to prove the truth of the matters asserted therein, Judge Weinstein allowed the conversation with instructions that it was only to be considered as proof of the agent's "state of mind" when he later met the defendant at Lange's apartment. *Id.* at 608-609. In reversing the conviction returned upon the evidence admitted, the Second Circuit noted the importance of the conversation to the government's case against the defendant; the "empirical logical flaws" in the argument that the agent's state of mind was material to any issue in the case; and the prosecutor's improper exploita-

tion of the evidence in summation. *Id.* at 610–611. In the case at hand, however, the Matuozzi Memorandum will not be a "crucial" part of the government's case under Counts 1 15, as William Stuckey himself will be called to testify as to everything reported in the document. As discussed at pp. 1191–1192, *supra,* the Memorandum is relevant to several material issues under Count 17. As to the prosecution's behavior in *Kaplan,* we presume the government is by this time well aware that no improper exploitation of the document will be tolerated either in examination of witnesses or in argument.

**11.** We note that defendant Cotler did not submit any affidavit made on personal knowledge in connection with his motion to suppress his statements. This absence of proof is, by itself, sufficient grounds to deny the suppression motion without hearing. *See United States v. Gillette*, 383 F.2d 843, 848 9 (2d Cir. 1967).

17. Defendant Pierce requests particulars concerning Count 17 and renews his request, previously denied by us, for particulars concerning the wire fraud count. We deny these requests. The information sought in Abrams' requests numbered 1, 2, 3, 7, 10, 11, 12, 13 and 15 does not represent ultimate facts necessary for preparation at trial. *See United States v. Iannelli*, 53 F.R.D. 482, 483 (S.D.N.Y.1971). With regard to Abrams' requests numbered 4, 6 and 8, the government is not required to disclose the precise manner in which the crimes alleged in the indictment were committed. *See United States v. Leonelli*, 428 F.Supp. 880, 882 (S.D.N.Y.1977). Abrams' requests numbered 5 and 9 essentially seek disclosure of the government's evidence in advance of trial. *See United States v. Chovanec*, 467 F.Supp. 41, 46 (S.D.N.Y.1979). We find the point of Abrams' request number 14 most unclear, and believe the indictment speaks for itself on this issue.

Defendant Pierce's three new requests all seek information that the government is not required to prove at trial, and are accordingly denied. *United States v. Iannelli*, 53 F.R.D. at 483. We deny again his requests pertaining to the wire fraud counts, as they either seek to compel the government to disclose the precise manner in which it will attempt to prove the charges (requests numbered 1, 2, 5, 6, 9, 11) or to disclose its legal theory (requests numbered 7, 8, 10), or seek information not related to ultimate facts in the case (requests numbered 3, 4 and 12). *See United States v. Leonelli*, 428 F.Supp. at 882, *United States v. Iannelli*, 53 F.R.D. at 483. We acknowledge defendant Pierce's argument that requiring the government to answer these requests might allow him to challenge the legal sufficiency of the government's charge. Given the factual detail that defendant Pierce seeks in this regard, however, it appears that the matter is best left for a challenge under Fed.R.Crim.P. 29 to the sufficiency of the government's case.

SO ORDERED.