**UNITED STATES of America**

v.

**Oliver L. NORTH.**

**Crim. No. 88–0080–02.**

United States District Court,
District of Columbia.

Nov. 29, 1988.

## MEMORANDUM AND ORDER

GESELL, District Judge.

Re: *Defendant North's Motion (#35) to Dismiss Counts 4, 9, and 13 as Duplicitous or, in the Alternative, to Compel the IC to Elect Within Each Duplicitous Count a Single Alleged Offense.*

The above motion is denied.

Counts 4, 9, and 13 charge defendant North with violations of 18 U.S.C. § 1505 for obstructing and endeavoring to obstruct inquiries of congressional committees. Motion #35 asserts that within each obstruction count, more than one violation

is alleged, and that these counts are duplicitous and should therefore be dismissed.

Even if within each of these counts, different violations are alleged which could each be a separate count, the dismissal North seeks is not necessarily warranted. Fairness to the defendant, as measured by the purposes of the duplicity doctrine, governs the Court's resolution of this issue. *United States v. Shorter*, 809 F.2d 54, 58 n. 1 (D.C.Cir.1987). The principal purpose of the duplicity doctrine is to erase the danger that a jury may return a guilty verdict without being unanimous on exactly the same offense.[1] It is the function of the Court, through instructions and other means, whenever an obstruction count can be interpreted as covering more than a single specific event, to ensure that the jury verdict returned is truly unanimous. A verdict in which some jurors focused on one event and others on another would be wholly impermissible. *Stromberg v. California*, 283 U.S. 359, 367–368, 51 S.Ct. 532, 535, 75 L.Ed. 1117 (1931). Thus, to avoid the evils of duplicity, where more than one event may be involved within the compass of a count, the jury verdict must either be unanimous on all events or be taken in a form that demonstrates it is clearly unanimous on one distinct event designated when the verdict is returned. Of course, where several events are encompassed within a single count and the jury selects one for a unanimous finding, the other events in the circumstances of this case will still have evidentiary significance. These principles are clearly established by precedents controlling in this Circuit. *United States v. Mangieri*, 694 F.2d 1270, 1281 (D.C.Cir.1982).

The doctrine of duplicity allows the charging of multiple means constituting a single and continuing offense. *Shorter*, 809 F.2d at 56; *United States v. Kearney*, 444 F.Supp. 1290, 1293 (S.D.N.Y.1978), citing *United States v. Zeidman*, 540 F.2d 314, 316–317 (7th Cir.1976); *Mellor v. Unit-*

---

**1.** Another vice of duplicity is that the defendant must be adequately informed of the nature and cause of the accusation, *United States v. Kearney*, 444 F.Supp. 1290 (S.D.N.Y.1978). That, however, is not at issue here, and any possible double jeopardy problem will be removed at the time a verdict is taken.

ed States, 160 F.2d 757–762 (8th Cir.), *cert. denied*, 331 U.S. 848, 67 S.Ct. 1734, 91 L.Ed. 1858 (1947). Obstruction of justice, in its various statutory forms, may be charged by stating a continuous course of conduct or by stating in separate counts specific identified events occurring over a period of time. *United States v. Brimberry*, 744 F.2d 580 (7th Cir.1984), *citing United States v. Berardi*, 675 F.2d 894 (7th Cir.1982). Under federal law a prosecutor has considerable discretion in choosing whether to charge obstruction as a continuous course of conduct or as separate events.

Turning to Counts 4, 9 and 13, it is apparent that Count 4 relates to events in the fall of 1985 involving very similar letters sent to two different congressional committees.[2] Count 9 involves events in August 1986 occurring at a meeting with a particular committee at the Situation Room of the White House.[3] Count 13 involves events occurring in November 1986 in which North allegedly prepared a false chronology in response to similar requests of two committees.[4] The congressional inquiries on these three occasions concerned different aspects of the evolving Iran-contra matter, and there were substantial differences in time among the counts. It is apparent that where more than one committee was involved, as in the case of Counts 4 and 13, and perhaps remotely even in the case of Count 9, the manner in which each committee was directly or indirectly treated was so comparable as to make dealings with each committee relevant and material under the respective counts. Joining events occurring closely in time before separate committees was reasonable because the Independent Counsel has contended that North was seeking to stymie congressional oversight or forestall any and all congressional action at that

---

**2.** Count 4 alleges that North obstructed congressional inquiries regarding his activities on behalf of the Nicaraguan contras before the House Permanent Select Committee on Intelligence (HPSCI) and the Subcommittee on Western Hemisphere Affairs of the House Committee on Foreign Affairs (HFAC) in September and October of 1985. The indictment alleges that in response to press reports of improper and illegal activities by members of the NSC staff, HPSCI and HFAC initiated their investigations within days of each other. In response to separate letters from the chairmen, North allegedly drafted obstructive responses. A comparison of the text of the initial letters North allegedly prepared for McFarlane, as quoted in counts 5 and 6 of the indictment, shows that North was asserting virtually the same propositions, in similar language, to each of the Committees. Count 4 also encompasses the follow-up letter he allegedly drafted and that was sent to HPSCI, explicated in Count 7.

**3.** Defendant's objection to Count 9 is puzzling. In August 1986, Congress once again became concerned with activities of North and the NSC with respect to the contras and North's contacts with Robert W. Owen and John K. Singlaub. A resolution of inquiry was introduced in the House of Representatives which would, if adopted, have directed the President to provide the House certain information concerning the activities of North or other members of NSC in support of the contras. The resolution was referred to the appropriate committees, HFAC, HPSCI, and the House Committee on Armed Services. Chairmen of two of these committees wrote on behalf of their committees to the President, seeking comments on the proposed resolution, and defendant Poindexter responded in separate letters to all three committees. In response to Poindexter's letter, the Chairman of *one* of the committees, the Permanent Select Committee on Intelligence, asked to meet with North to probe the events more fully. Count 9 concerns North's conduct in that meeting with members and staff of HPSCI. Count 9 does allege that at the meeting in the Situation Room, North sought to obstruct and impede the due and proper exercise of the power of inquiry of all three pending inquiries. Nevertheless, North's argument that IC and the grand jury should have charged three separate counts for his conduct at this one meeting with members of HPSCI is strained, indeed.

**4.** In early November 1986, the foreign and domestic press began reporting on United States arms sales to Iran. The House Permanent Select Committee on Intelligence, this time with the parallel Senate Select Committee on Intelligence (SSCI), again stirred into action, giving notice to the CIA and other Executive Branch agencies and entities that the committee would be conducting hearings to inquire into these matters. John Poindexter, among other officials, was requested to appear before the respective committees on November 21. In preparation for his appearance, North allegedly participated in the preparation of a false and misleading chronology of events, and spent four or five days altering, destroying, concealing and removing documents, records and papers of the NSC and its staff concerning aid to the contras and arms to Iran.

particular time. When responding to contemporaneous congressional inquiries sparked by fresh press revelations, North took the same tack toward each committee, whether it be the House Permanent Select Committee on Intelligence, the House Armed Services Committee, the House Committee on Foreign Affairs, or the Senate Select Committee on Intelligence.

■ In this case, it was reasonable and fair for the Independent Counsel and the grand jury to frame the counts as was done. North says that the continuing offense concept of *Shorter*, employed here, is inappropriate because the IC chose to charge three separate counts. (Def's Motion, page 4, n. 2). In a responsible, understandable fashion, the IC avoided charging a multitude of additional counts, each of which could carry an additional penalty if conviction occurred. He did not unnecessarily duplicate the charges, but he properly recognized that there were three critical times, involving somewhat separate questions, when North sought to block Congress' proper inquiries. Had he chosen to charge *one* violation of § 1505, the dangers of a non-unanimous jury on any particular set of facts, but a unanimous finding of guilty overall, would be much greater.

Defendant urges that counts must be dismissed for duplicity if a separate element is involved for the different offenses within a single count. This *Blockburger* test[5] is inapposite for an offense which may be continuing, such as obstruction of a congressional inquiry. Just as cheating on one's taxes year after year involves a separate element—a distinct year—but can still be characterized as a single count of tax evasion, as in *Shorter*, North's efforts to impede or obstruct separate congressional inquiries closely related in time may also constitute a single violation of § 1505 in each instance.

The Court finds no prejudice to the defendant in the Independent Counsel's approach. All concerns expressed by North on grounds of duplicity can readily be met by the guidance the Court would normally give the petit jury and appropriate instructions that the jury unanimously agree that there was at least one obstruction of a single committee inquiry. North's motion to dismiss is denied.

SO ORDERED.

---

5. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), articulated the principle defendants urge: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."